QUAPAW QUARTER ASSOCIATION, Inc.
and Mart VEHIK *v.* CITY OF LITTLE
ROCK BOARD OF ZONING ADJUSTMENT
et al and ARKANSAS WAFFLES, Inc.

76-243                                          546 S.W. 2d 427

Opinion delivered February 22, 1977
(Division I)

*Cearley, Gitchel, Bogard & Mitchell,* for appellants.

*Joseph C. Kemp,* City Atty., and *David P. Henry,* Asst. City Atty., for City of Little Rock Bd. of Zoning Adjustment, appellee.

*Wright, Lindsey & Jennings,* for Arkansas Waffles, Inc., W. A. Saunders, Dr. L. V. Clement and Mrs. L. V. Clement, appellees.

CONLEY BYRD, Justice. Pursuant to an ordinance establishing the Central Little Rock Plan for zoning, the Board of Adjustment approved the application of Arkansas Waffles, Inc. for a conditional use permit authorizing the operation of a restaurant on the property located immediately south of the Texaco Station at 9th St. and the Interstate 30 service road subject to certain conditions — *i.e.* that the property be oriented toward the Interstate service road and that certain screening and set backs be agreed to by the appellees. The appellants, Quapaw Quarter Association, Inc. and Mart Vehik; appealed to the circuit court. Between the time of the determination by the Board of Adjustment and the hearing in the circuit court, the City of Little Rock passed a resolution requesting the Board of Adjustment to refuse permits for uses of property not allowed in the "E-1" Quiet Business Zoning District in the area adjacent to McArthur Park.

Upon a trial de novo, the circuit court granted the conditional use of the property subject to the same conditions and restrictions placed thereon by the Board of Adjustment. From that order, the appellants appeal contending that the decision of the trial court is unreasonable, arbitrary and capricious and that the circuit court erred in failing to give effect to the resolution of the City of Little Rock.

The record shows that the Central Little Rock Zoning Ordinance, hereinafter referred to as CLR Plan, established six zoning classifications within the downtown area. One of these classifications is HR, High Density Residential. Under the terms of the CLR Plan the property in question was zoned HR which expressly stipulated four categories of use groups: (1) Community Facilities — Group B; (2) Single family dwellings; (3) Multi-family dwellings; and (4) Townhouses. Additionally, the CLR Plan conferred upon the municipal Board of Zoning Adjustment the authority to grant "conditional use permits" in areas zoned HR for the following:

1. Community Facilities: Group A
2. Community Facilities: Group C
3. Apartment hotel
4. Professional offices and related facilities
5. Hotel, motel and amusement
6. Convenience goods and services
7. Eating place, other than drive-in.

The authority of the Board of Adjustment with regard to granting conditional use permits is set forth in Section 43-37 of the CLR Plan as follows:

"Sec. 43-37    Conditional Use Permit.

A conditional use permit may be granted by the board of adjustment of the city of Little Rock upon written application from the property owner or his authorized agent and after submission of a site development plan. In granting a conditional use permit the board of adjustment shall impose such requirements and conditions, including bulk and area requirements, in addition to those expressly stipulated in this article for the particular use, as the board may deem necessary for the protection of adjacent properties and the public interest. The board should be cognizant of the intent of Section 43-45 'Historic and Architectural Preservation,' of this article. On each application for a conditional use permit the housing authority will submit a recommendation upon request by the board of adjustment."

Section 43-45 of the ordinance, referred to above, reads as follows:

"Section 43-45    Historic and Architectural Preservation.   .

Owners and developers of properties which are recognized as historically or architecturally significant, should endeavor to preserve and enhance the architectural and historic qualities of these properties."

Anderson, American Law of Zoning, Vol. 3, § 15.01

(1968) explains the purpose of Conditional Use Permits in zoning and planning as follows:

> "Nearly all zoning ordinances make some use of special-permit procedures. Most ordinances impose a broad division of land uses and, in addition, provide that specified uses may be established or maintained in named districts, only pursuant to a special permit issued with the approval of the board of adjustment. These regulations empower the boards to issue permits after notice, hearing, and specified findings. They detail certain standards which must be met before a permit may be issued; commonly, they authorize or require the board to impose conditions designed to protect abutting landowners and preserve the character of the neighborhood. The special-permit technique is employed to control uses which are regarded as especially troublesome, and to soften the impact of certain uses upon areas where they will be incompatible unless conditioned in a manner suitable to a particular location."

While it is true that the circuit court hears appeals from the Board of Adjustment de novo, our review of the decision of the circuit court is only to see if the circuit court committed an error prejudicial to the complaining party — *i.e.* we must sustain the findings of the circuit court if they are supported by any substantial evidence, *Arkansas Power & Light Co.* v. *City of Little Rock*, 243 Ark. 290, 420 S.W. 2d 85 (1967).

Several of the witnesses described in their testimony the location of the property for which the conditional use permit is sought. It is bounded immediately by a Texaco station on the north, an access road to Interstate 30 on the east, a vacant lot on the south, and McAlmont Street on the west. There was also testimony by Mr. William Putnam that approximately 77,093 cars per day pass by the subject property on Interstate 30, while 11,413 automobiles per day pass on the access road immediately east of the property. This totals 88,506 cars per day within 350 feet of the property.

Several witnesses testified that 911 McAlmont is a vacant lot and that there is nothing of architectural or historical

significance on the property which could be preserved or enhanced.

Furthermore, witnesses testified that some of the single family residences which are bounded by McAlmont, the Interstate 30 frontage road, Ninth Street, and Tenth Street, are coming down rather than being maintained, that there is no renovation or restoration of dwellings going on on any part of the land, and that there are no structures with redeeming esthetic value or architectural significance on the land.

Some of appellant's witnesses went so far as to say that while they objected to the proposal of Arkansas Waffles, Inc., they would not object to the restoration of a former residence, architecturally significant, into a restaurant at that location.

Consequently, when we consider the conditions imposed upon the granting of the conditional use for the protection of the adjacent properties, we cannot say that the findings of the trial court are not supported by any substantial evidence.

In *Meyer v. Seifert*, 216 Ark. 293, 225 S.W. 2d 4 (1949), we pointed out that an ordinance of a city cannot be repealed, amended or suspended by resolution. Consequently, we find no merit in appellants' contention that the trial court should have considered the tardy resolution by the city.

Affirmed.

We agree: HARRIS, C.J., and HOLT and HICKMAN, JJ.