Marvin CARMICAL and Margaret E. Carmical
*v.* David McAFEE

CA 99–430 7 S.W.3d 350

Court of Appeals of Arkansas
Division II
Opinion delivered December 22, 1999
[ Petition for rehearing denied January 26, 2000. ]

314

*J.R. Nash*, for appellants.

*Snellgrove, Langley, Lovett & Culpepper*, by: *Todd Williams*, for appellee.

JOSEPHINE LINKER HART, Judge. In September 1997, appellants Margaret and Marvin Carmical, mother and son, filed a complaint against appellee, David McAfee, in circuit court, alleging that he had committed against them acts of malicious prosecution, abuse of process, and several other intentional torts by filing, in April 1993, a lawsuit against them and the City of Beebe, Arkansas, asking the court to preclude appellants from obtaining a permit to build a storage building on their vacant lot zoned residential. The court granted appellee's motion for summary judgment, and, on appeal, we affirm.

The case at bar, plus the 1993 lawsuit and an earlier suit filed in 1988, all involve an application made by appellant Marvin Carmical to the Beebe Planning Commission in October 1985 seeking permission to build a storage building on a vacant lot, the approval of the permit by the zoning ordinance enforcement officer, and the Beebe Board of Adjustment's rescission of that building permit. Marvin Carmical's application to the Planning Commission requested permission to construct a forty-foot by fifty-foot storage building, as an accessory building, on an unimproved lot owned jointly by appellants, and located across the street from their home. There was no request on the application for permission to construct a main residence or any indication that appellants would build a house or other main building on the lot in the future. The Beebe zoning ordinance enforcement officer approved the building-permit application.

In November 1985, appellee, an owner of lots located near appellants' property, filed with the Beebe Board of Adjustment a complaint alleging that the zoning ordinance enforcement officer

had improperly issued the building permit to Marvin Carmical because Beebe's zoning ordinance did not permit a storage building to be built as an accessory building on a vacant lot that had been zoned single-family residential. In December 1985, the Board of Adjustment agreed with appellee and rescinded the building permit. The Board concluded that a storage building could be built as an accessory building on a single-family residential lot only if it were "a subordinate building to a main building."

In 1988, appellants sued the city alleging that the Board illegally rescinded the building permit. Appellants litigated this matter in both state and federal court. Part of the history of this litigation is set forth in *Carmical v. City of Beebe*, 316 Ark. 208, 871 S.W.2d 386 (1994), and in *Carmical v. City of Beebe*, 302 Ark. 339, 789 S.W.2d 453 (1990). In March 1993, the Board voted to reinstate the building permit issued to Marvin Carmical in October 1985.

In April 1993, appellee filed a complaint against appellants and the city arguing that appellants did not intend to construct any structure on their vacant lot other than an accessory building. Appellee alleged that appellants' permit was granted in violation of the Beebe zoning code because an accessory building is a subordinate building, which could only be built when the use is incidental to and located on the same lot as the main building. Appellee noted that under the zoning ordinance and Ark. Code Ann. § 14-56-416(b)(2)(B)(i)(b) (1987), the Board could not permit, as a variance, any use of property that is not permitted under the zoning ordinance. He asked that Beebe be ordered to rescind the reinstated building permit and appellants be prohibited from constructing the accessory structure upon their vacant lot.

In April 1993, appellants filed an answer asserting that the Board had properly reinstated Marvin Carmical's building permit and that they intended to construct a residence on their vacant lot "within a reasonable time." In May 1993, appellee filed an amended complaint alleging that the Board's reinstatement of the building permit was illegal because appellants had not filed a new building-permit application. In addition, appellee alleged that the Board had abused its discretion by reinstating the 1985 building permit because the time to administratively appeal the rescission of the building permit had expired. Appellants responded and asserted that, in February 1993, Marvin Carmical did apply to the Beebe

Planning Commission for a new permit to build a storage building on their vacant lot. In January 1995, appellee moved for summary judgment, and the court denied appellee's motion. Thereafter, the court granted appellee's request to nonsuit the case.

In September 1997, appellants filed a complaint in circuit court against appellee that is the subject of this appeal. In this complaint, appellants alleged that appellee, by filing a complaint against them in April 1993, had committed against them acts of malicious prosecution, abuse of process, and several other intentional torts. Appellants requested that the circuit judge recuse from the proceedings, but the circuit judge denied the motion. Appellee moved for summary judgment in June 1998, and the circuit judge, after hearing oral argument from counsel, handed down a letter opinion stating that he intended to grant appellee's summary-judgment motion. Appellants requested reconsideration of that decision and renewed their recusal request. In January 1999, the court entered an order denying appellants' renewed recusal request and granting appellee's summary-judgment motion.

 The standard of review of a trial court's granting a motion for summary judgment was recently explained as follows:

> The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*; *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997); *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998). After reviewing undisputed facts, summary judgment should be denied if under the evidence reasonable men might reach different conclusions from the undisputed facts. *See, Leigh*

*Winham, Inc. v. Reynolds Ins. Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983).

*George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 210-11, 987 S.W.2d 710, 712 (1999). A trial court should grant summary judgment to a defendant if he or she conclusively shows that some fact essential to the plaintiff's cause of action is lacking and the plaintiff is unable to offer substantial evidence to the contrary. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995); *Akridge v. Park Bowling Center, Inc.*, 240 Ark. 538, 401 S.W.2d 204 (1966).

Appellants assert that the circuit court erred in granting appellee's motion for summary judgment because there were genuine issues of material fact remaining to be litigated in appellants' claim that appellee committed five intentional torts against them: 1) malicious prosecution; 2) abuse of process; 3) outrage; 4) intentional interference with use and enjoyment of property; and 5) violation of the appellants' rights guaranteed to them by the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101-08 (Supp. 1999). Appellants also maintain that the circuit court erred in granting appellee's summary-judgment motion because there were genuine issues of material fact remaining to be litigated regarding whether appellee should be liable for punitive damages. Appellants also maintain that the circuit judge erred in denying their requests that he recuse from the proceedings. We disagree and affirm.

The circuit court did not err in granting summary judgment on appellants' claim that appellee committed the act of malicious prosecution by filing the 1993 complaint against them and the city. Appellants could not prove the lack of probable cause, an essential element of malicious prosecution. To prove malicious prosecution, the plaintiff must establish each of the following elements: 1) an earlier proceeding instituted or continued by the defendant against the plaintiff; 2) termination of the proceeding in favor of the plaintiff; 3) absence of probable cause for the proceeding; 4) malice on the part of the defendant; and 5) damages. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); *Kellerman v. Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998). Proof of absence of probable cause is an essential element in a claim for malicious prosecution. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, supra; Smith v. Anderson*, 259 Ark. 310,

532 S.W.2d 745 (1976). The allegedly malicious prosecution can be a civil proceeding. *See, e.g., Farm Serv. Coop., Inc. v. Goshen Farms, Inc.*, 267 Ark. 324, 590 S.W.2d 861 (1979); *Citizens' Pipe Line Co. v. Twin City Pipe Line, Co.*, 183 Ark. 1006, 39 S.W.2d 1017 (1931). In the context of malicious prosecution, probable cause means such a state of facts or credible information which would induce an ordinarily cautious person to believe that his lawsuit would be successful. *See McLaughlin v. Cox, supra; Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). Probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal action. *Kellerman v. Zeno, supra.* In order to have a probable-cause basis to file a lawsuit, a person need only have the opinion that the chances are good that a court will decide the suit in his favor. RESTATEMENT (SECOND) OF TORTS § 675 comment (f) at 460 (1977). The question is not whether the person is correct in believing that his complaint is meritorious, but whether his opinion that his complaint is meritorious was a reasonable opinion. *Id.* A person need have only a reasonable opinion that his complaint is meritorious because, "[t]o hold that the person initiating civil proceedings is liable unless the claim proves to be valid would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions." *Id.* A person's refusal to believe an improbable explanation from someone that he subsequently sues does not amount to substantial evidence that he lacked probable cause to file the lawsuit. *See Kroger Co. v. Standard*, 283 Ark. 44, 670 S.W.2d 803 (1984). The issue of lack of probable cause in a malicious-prosecution case may be decided as a matter of law on summary judgment only if both the facts relied upon to create probable cause and the reasonable inferences to be drawn from the facts are undisputed. *Harmon v. Carco Carriage Corp., supra; Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993).

Our analysis of whether appellee had probable cause to file suit against appellants requires us to review the pertinent provisions of Beebe's zoning ordinance to determine whether it was reasonable for appellee to believe that a court would prohibit appellants from constructing the storage building. In addition, appellee must have also had a probable-cause basis for believing that appellants did not intend to construct a main building on their vacant lot.

The appellants' vacant lot is located in an area of Beebe zoned for single-family residences. Beebe's zoning ordinance states that property zoned for single-family residences may be used for "[a]ccessory buildings which are not a part of the main buildings." The zoning ordinance defines "accessory buildings and uses" as follows:

> An accessory building is a subordinate building or a portion of the main building, the use of which is clearly incidental to, or customarily found in connection with, and (except as otherwise provided in this Ordinance) located on the same lot as, the use of the main building or principal use of the land. An accessory use is one which is clearly incidental to, or customarily found in connection with, and on the same lot as, the main use of the premises . . . .

The ordinance also defines "main or principal building" as, "A building in which is conducted or intended to be conducted, the main or principal use of the lot on which said building is located." Moreover, the ordinance defines "principal use" as, "The specific primary purpose for which land, building, or structure is used or intended to be used."

Because zoning ordinances are in derogation of the common law, we must strictly construe them in favor of the property owner. *See Blundell v. City of West Helena*, 258 Ark. 123, 522 S.W.2d 661 (1975); *City of Little Rock v. Andres*, 237 Ark. 658, 375 S.W.2d 370 (1964). However, although zoning ordinances must be strictly construed in favor of the property owner, this rule does not compel a contrived result when common sense points elsewhere. *Tillery v. Meadows Construction Co.*, 284 Ark. 241, 681 S.W.2d 330 (1984). Of course, the basic rule of statutory construction is to give effect to the intent of the legislative body that enacted the statute. *Central & Southern Co. v. Weiss*, 339 Ark. 76, 3 S.W.3d 294 (1999). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe statutes so that no word is left void, superfluous, or insignificant and that meaning and effect are given to every word in the statute if possible. *Id.*

The gist of appellee's complaint was that the storage building that appellants intended to construct on their vacant lot would not be an accessory building because it would not be located on the same lot as a "main building." Appellants maintain that there was not probable cause for appellee to believe that a court would interpret the pertinent provisions of Beebe's zoning ordinance to prohibit their construction of a storage building, as an accessory building, on their vacant lot. Appellants' contention in this regard is erroneous. While there are no relevant cases in Arkansas, cases from other jurisdictions hold that an accessory building cannot be constructed on a lot that has no main building.

The "same lot" restriction is a common part of the definition of "accessory building" in municipal zoning ordinances. *See, e.g., Bryan v. Board of Adjustment*, 491 So.2d 254 (Ala. Civ. App. 1986); *Board of County Commissioners v. Thompson*, 493 P.2d 1358 (Colo. 1972); *A. C. Guhl v. Par-3 Golf Club, Inc.*, 231 S.E.2d 55 (Ga. 1976); 101A C.J.S.*Zoning & Land Planning* § 152 at 472-73 (1979). In interpreting municipal zoning ordinances, some jurisdictions give the "same lot" restriction on accessory buildings a strict interpretation. For example, the Rhode Island Supreme Court has held that two lots owned by the same person are not the "same lot" for the purpose of permitting an accessory use of one of the lots if the two lots are separated by a public highway. *Sanfilippo v. Board of Review*, 188 A.2d 464 (R.I. 1963). Two jurisdictions have held that adjoining, separate lots owned by the same person are not the "same lot" for the purpose of establishing an accessory use on one lot incidental to a principal use conducted on the other lot. *Adley v. Paier*, 167 A.2d 449 (Conn. 1961); *Larsen v. Town of Colton*, 973 P.2d 1066 (Wash. App. 1999). Several jurisdictions have interpreted the "same lot" restriction in municipal zoning ordinances to prohibit an accessory building if it is not located on the same lot as a principal building. *Kowalski v. Lamar*, 334 A.2d 536 (Md. Ct. Spec. App. 1975); *Lowry v. City of Mankato*, 42 N.W.2d 553 (Minn. 1950); *Sinon v. Zoning Bd. of Appeals*, 497 N.Y.S.2d 952 (N.Y. App. Div. 1986); *Kelley v. Zoning Hearing Bd.*, 554 A.2d 1026 (Pa. Commw. Ct.), *rev. denied*, 562 A.2d 828 (1989); *Sojtori v. Douglass Township Bd. of Supervisors*, 296 A.2d 532 (Pa. Commw. Ct. 1972); *Hein v. Town of Foster Zoning Bd.*, 632 A.2d 643 (R.I. 1993); *Sanfilippo v. Board. of Review, supra; City of Warwick v. Campbell*, 107 A.2d 334 (R.I. 1954). Given the weight of this authority, we conclude that

the circuit court did not err in determining that there was probable cause for appellee's complaint against appellants insofar as it was reasonable for appellee to believe that a court would interpret the pertinent provisions of Beebe's zoning ordinance to prohibit appellants from erecting a storage building on their vacant lot.

Furthermore, the circuit court properly determined that appellee had probable cause to believe that appellants would not erect a main building on their vacant lot. Neither appellant Marvin Carmical's October 1985 application for a permit to build a storage building on the vacant lot nor his February 1995 application stated that appellants intended to build a main building there. The spaces on both applications regarding building information for a main building were left blank. Moreover, after appellee filed his April 1993 complaint, appellants never submitted an amended building-permit application to the Beebe Planning Commission stating that they would erect a main building on their vacant lot. Further, in a January 1998 deposition, appellant Margaret Carmical admitted that appellants had never consulted with a contractor about building a house on the vacant lot. She admitted in that deposition that since the circuit court had entered an order granting appellee's request for entry of a judgment of nonsuit in appellee's lawsuit, neither she nor her son have submitted an application to the Beebe Planning Commission requesting a permit to build a house on their vacant lot. In a January 1998 deposition, appellant Marvin Carmical admitted that nothing had "been done in terms of buildings on the property."

Appellants argue that there are genuine issues of material fact remaining to be litigated regarding whether appellee knew that they intended to build a house on their vacant lot. According to appellants, appellee was aware that they intended to build a house on their vacant lot after they built the storage building. This argument, however, misses the point. The issue before the circuit court was not whether appellants actually intended to construct a house or main building on their vacant lot but, instead, whether appellee had probable cause to believe that appellants would not do so. We conclude that the circuit court did not err in concluding that appellee had probable cause to believe that appellants would not construct a main building on their vacant lot.

Appellants also assert that appellee's filing of his complaint amounted to an act of malicious prosecution because he did

not appeal the Board of Adjustment's reinstatement of the building permit. According to appellants, appellee was able to raise before the circuit court several issues that he could not have raised had he styled his pleading as an appeal. This argument is meritless. Arkansas Code Annotated section 14-56-425 (Repl. 1998) states that appeals from final action taken by municipal zoning boards of adjustment "may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts...." Pursuant to that statute, "appeals" to circuit court are not limited proceedings where the circuit court merely conducts a substantial-evidence review but, instead, are trials de novo. *See Arkansas Power & Light Co. v. City of Little Rock*, 243 Ark. 290, 420 S.W.2d 85 (1967); *see also Quapaw Quarter Assn. v. Board of Zoning Adjustment*, 261 Ark. 74, 546 S.W.2d 427 (1977).

■ Appellants also argue that the circuit court erred in granting summary judgment because it remained open whether appellee had disclosed all the material facts known by him to his attorney when he filed the complaint. We do not address this issue because appellee had probable cause for his complaint. Whether the defendant in a malicious-prosecution case made a full, fair, and truthful disclosure to an attorney of the material facts known to him and then acted in good faith upon his attorney's advice in prosecuting his suit need be addressed only if the defendant lacked probable cause to prosecute his lawsuit. *See McLaughlin v. Cox, supra; Machen Ford-Lincoln-Mercury, Inc. v. Michaelis*, 284 Ark. 255, 681 S.W.2d 326 (1984).

■ Appellants argue that appellee filed his complaint against them with malice. In support of the assertion, they introduced affidavits and testimony by deposition to the effect that appellee disliked them and had sued them with the malicious intention of harassing them and depriving them of the use of their vacant lot. The elements of lack of probable cause and malice are not equivalent and neither necessarily flows as a legal presumption from the establishment of the other. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). Proof of malice does not, of itself, give rise to an inference of lack of probable cause. *Cordes v. Outdoor Living Ctr., Inc., supra; Farm Serv. Coop. v. Goshen Farms, Inc., supra; Price v. Morris*, 122 Ark. 382, 183 S.W. 180 (1916). If probable cause to support the filing of the lawsuit is present, a

subsequent action for malicious prosecution will fail even if the initial suit was prosecuted in a spirit of ill will or with malice. *Cordes v. Outdoor Living Ctr., Inc., supra; Price v. Morris, supra.* Appellants' proof of appellee's alleged malice is simply irrelevant.

▌ Appellants' inability to prove that appellee lacked probable cause also establishes that the circuit court did not err in granting summary judgment regarding their allegation of outrage. To succeed on an outrage claim, the plaintiff must prove four elements, one of which is that the defendant's conduct was extreme and outrageous and utterly intolerable in a civilized community. *See Brown v. Fountain Hill Sch. Dist.,* 67 Ark. App. 358, 1 S.W.3d 27 (1999). Given that appellee had probable cause, as a matter of law appellants cannot prove that appellee's conduct in filing the complaint was utterly intolerable in a civilized community.

▌ For the same reason, we conclude that the circuit court did not err in granting summary judgment on appellants' claim that appellee committed the tort of intentional interference with use and enjoyment of property. Appellants fail to cite any decision by this court or the Arkansas Supreme Court which recognizes the tort of intentional interference with the use and enjoyment of property. Appellants maintain that this tort exists by way of analogy to the intentional tort of tortious interference with a contractual relationship or business expectancy. *See Brown v. Tucker,* 330 Ark. 435, 954 S.W.2d 262 (1997). Assuming *arguendo* that the tort of intentional interference with use and enjoyment of property is cognizable in Arkansas, we conclude that appellants could not prove that appellee committed this tort because appellee's conduct in filing his complaint was not improper. A person commits intentional interference with a contractual relationship or business expectancy only by conduct that is improper. *See Mason v. Wal-Mart Stores, Inc.,* 333 Ark. 3, 969 S.W.2d 160 (1998). Filing a civil lawsuit is improper conduct for purposes of intentional interference if it is done with no belief in its merits or is done in bad faith. RESTATEMENT (SECOND) OF TORTS § 767 comment (c) at 30-1 (1979). Because appellants cannot show that appellee lacked probable cause to file his complaint, they cannot prove that appellee's conduct was improper.

▌ We also conclude that the circuit court did not err in granting summary judgment regarding appellants' claim that appellee had violated a right guaranteed to them by the Arkansas Civil

Rights Act of 1993, Ark. Code Ann. §§ 16-123-101—108 (Supp. 1999). Appellants have no civil right to be free from a lawsuit filed against them if the lawsuit is based on probable cause. Appellants also assert that there are genuine issues of material fact remaining to be litigated concerning whether their civil rights were violated when they were treated differently than other people were treated by the members of the Board of Adjustment. According to appellants, the members of the Board of Adjustment violated their civil rights by interrupting appellant Margaret Carmical and by arguing with her when she appeared before the Board. According to appellants, they have been treated differently in this respect when they appeared before the Board by members who were relatives or friends of appellee. At most, appellants have merely raised a suspicion that appellee was somehow involved in orchestrating the different treatment to which they allege they have been subjected when they have appeared before the Board of Adjustment. A mere suspicion in the mind of the party against whom summary judgment is sought will not create a genuine issue of material fact. *See Biedenharn v. Hogue*, 338 Ark. 660, 1 S.W.3d 424 (1999); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999).

Appellants also assert that the circuit court erred in granting summary judgment on their claim of abuse of process when he sued them in April 1993. A litigant commits this tort when he or she uses a judicial process to extort or coerce. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998); *Union National Bank v. Kutait*, 312 Ark. 14, 846 S.W.2d 652 (1993). The elements of abuse of process are: 1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; 2) the perversion of the legal procedure to accomplish an alternative purpose for which it was not designed; and 3) a willful act perpetrated in the use of process which is not proper in the regular conduct of the legal proceeding. *Routh Wrecker Serv., Inc. v. Washington, supra; McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994). The key to recognition of abuse of process is the improper use of process after its issuance in order to accomplish a purpose for which the process was not designed. *Routh Wrecker Serv., Inc. v. Washington, supra; Harmon v. Carco Carriage Corp., supra.* Proof that a litigant filed a vexatious lawsuit is not sufficient by itself to prove that the litigant committed abuse of process because there must also be proof of a specific abusive use of process. *McNair v.*

*McNair, supra; Morse v. Morse*, 60 Ark. App. 215, 961 S.W.2d 777 (1998). Examples of misuse of process that have been found to constitute the tort of abuse of process are the service of an arrest warrant; delivery of an order to a sheriff for execution; personal service procured by fraud; or attachment or garnishment for a greatly excessive amount. *See McNair v. McNair, supra; Farm Service Coop., Inc. v. Goshen Farms, Inc., supra.* Judicial process has been defined as a comprehensive term which includes all writs, rules, orders, executions, warrants, or mandates issued by a court during the progress of a cause of action. *See Henderson v. Dudley*, 264 Ark. 697, 574 S.W.2d 658 (1978); *Smith v. Smith*, 28 Ark. App. 56, 770 S.W.2d 205 (1989). Appellants, however, could not prove that appellee committed a willful act perpetrated in the use of process which is not proper in the regular conduct of the proceeding.

Appellants argue that there were genuine issues of material fact remaining to be litigated regarding whether appellee had committed abuse of process when he sued them in April 1993 because, in the course of that litigation, appellee allegedly engaged in wrongful conduct. However, none of appellants' allegations amounts to a showing that appellee, in the course of the lawsuit, caused, in an abusive manner, the circuit court to issue some order, warrant or mandate; appellants merely allege that appellee prosecuted his 1993 lawsuit in bad faith.

We conclude that the circuit court properly granted summary judgment even though appellants requested in their complaint that they be awarded punitive damages. Appellants could not prove an essential element of each of the intentional torts that they alleged appellee committed. Thus, as a matter of law, they would not be entitled to punitive damages.

Appellants also contend that the circuit judge erred in denying their request that he recuse. They assert that the circuit judge should have recused because his former law partner had been the attorney for the City of Beebe in 1993 when appellee sued the city and appellants. Appellants also note that the circuit judge's former law partner also represented the city when they sued it and a number of city officials in 1988, after the Board of Adjustment had rescinded the building permit that had been issued to Marvin Carmical in October 1985. Appellants also maintain that the circuit judge should have recused because, in 1988, he posed for a photo-

graph that appeared in the local newspaper showing him at a groundbreaking ceremony with appellee and appellee's cousin. Finally, appellants assert that the circuit judge should have recused because, in the letter opinion that the judge handed down on July 29, 1998, he stated, "First, let me say I am bothered about the inflammatory language, the conclusionary assertions, the illogic, and the lack of definitiveness in [appellants'] filings. The documents submitted by [appellants] reek with venom. [Appellants] claim to have been abused and mistreated by people, but the evidence before me does not bear this out." Appellants' recusal arguments are meritless.

 A trial judge is required to recuse from cases in which his or her impartiality might reasonably be questioned under Arkansas Code of Judicial Conduct, Canon 3E(1). *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). The party requesting that the trial judge recuse bears the burden of proving that the trial judge should do so. *Sturgis v. Skokos, supra; Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). A trial judge is presumed to be impartial. *Trimble v. State*, 336 Ark. 437, 986 S.W.2d 392 (1999); *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). A trial judge's decision to recuse is within his or her discretion, and we will not reverse absent a showing of abuse of discretion. *Massongill v. County of Scott*, 337 Ark. 281, 991 S.W.2d 105 (1999); *Sturgis v. Skokos, supra*. An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial judge. *Sturgis v. Skokos, supra; Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996). However, a trial judge's development of opinions, biases, or prejudices during a trial do not make the trial judge so biased as to require that he or she recuse from further proceedings in the case. *Noland v. Noland, supra; Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987); *Schwarz v. Moody, supra*. Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge which will cause us to reverse his or her refusal to recuse. *Noland v. Noland, supra; Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). The mere fact of adverse rulings is not enough to demonstrate bias. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999).

 A trial judge is not required to recuse if his or her former law partner is counsel in the proceeding at hand. *Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997). In this case, the circuit judge's former law partner was not counsel for either party, but had

merely represented the City of Beebe as defendant in two previous lawsuits, one filed by each party, that are part of the circumstances out of which this case arose. Further, the circuit judge was not required to recuse merely because, nine years before appellants filed their complaint in this case and before he was elected to a judgeship he had, as a legislator, attended a groundbreaking ceremony along with other officials, held in connection with the building of a retirement center owned in part by appellee. A trial judge is not required to recuse because of his or her life experiences. *See Gates v. State, supra; Ayers v. State, supra.* Finally, the circuit judge did not err in denying the appellants' requests that he recuse based upon his characterization, in the court's letter opinion, of the appellants' pleadings as containing inflammatory language, conclusory assertions, illogic and his characterization of appellants' documents as reeking with venom. A trial judge is not required to recuse because he or she has developed and expressed an opinion about the case at hand based on what the judge has learned from his or her participation in the case. *Arkansas State Bd. of Nursing v. Long,* 8 Ark. App. 288, 651 S.W.2d 109 (1983); 46 AM. JUR. 2d *Judges* § 150 (1994).

For the reasons set forth above, we affirm the circuit court's grant of appellee's summary-judgment motion.

Affirmed.

ROBBINS, C.J., and PITTMAN, J., agree.