WINDSONG ENTERPRISES, INC. *v.*
Richard UPTON

CA 04-571                                    209 S.W.3d 373

Court of Appeals of Arkansas
Substituted Opinion on Grant of Rehearing delivered
June 1, 2005[1]

[Rehearing denied June 29, 2005.]

---

[1] Reporter's Note: Original unpublished opinion delivered February 9, 2005.

*John Belew* and *M. Stephen Bingham*, for appellant.

*Stuart Hankins*, for appellee.

J OSEPHINE LINKER HART, Judge. In a previous opinion, *Windsong Enterprises, Inc. v. Upton*, CA04-571 (Ark. App. Feb. 9, 2005), we affirmed the Cleburne County Circuit Court's award of summary judgment to appellee Richard Upton in appellant Windsong's lawsuit for tortious interference with a business expectancy on the ground that, as a matter of law, appellant did not have a valid business expectancy. Appellant has filed a petition for rehearing, arguing that our original decision was erroneous. After careful reconsideration, we find appellant's argument to be persuasive. Accordingly, we grant the petition for rehearing and issue this substituted opinion reversing the circuit court's grant of summary judgment and remanding for trial.

Appellant, a land developer, owns real property, "Southwinds," in the Eden Isle subdivision in Cleburne County. Appellant's adjoining landowner and predecessor in title, appellee Upton, resides in that subdivision and owns a significant portion of the real estate in the Eden Isle development. He also has an interest in several businesses there, including Red Apple Enterprises Limited Partnership. Soon after appellant purchased Southwinds, it learned that appellee had inadvertently conveyed to appellant some of the cart paths on the Red Apple golf course. Although

Upton attempted to reacquire that land, the parties could not agree upon a price. According to appellant, Upton then began to interfere with appellant's plans to develop Southwinds, which was zoned for condominiums when appellant purchased the property. After the cart-path dispute, appellee allegedly banded together with friends and relatives who also owned property in the Eden Isle subdivision, and, using a provision in the original bill of assurance providing for its amendment by a majority of the landowners, rezoned appellant's property to permit only single-family residences.

Eden Isle Corporation and its president, Donald Tollefson, filed this action for declaratory relief against appellant as to whether appellant could subdivide the Southwinds property without the approval of Eden Isle Corporation. Appellant filed a counterclaim, which it amended to add Red Apple Enterprises and Richard Upton as counterdefendants. While this lawsuit was pending, Eden Isle Corporation filed another action against appellant and Red Apple Enterprises in Cleburne County concerning the sewer service in Eden Isle subdivision (the "sewer case"). Appellant filed a counterclaim against Eden Isle Corporation and a cross-claim against Red Apple Enterprises in that case, alleging intentional interference with a business expectancy. Upton was not named as a party in the sewer case. After amending its counterclaim in this action several times, appellant filed a motion for voluntary dismissal of its claims for intentional interference with its business expectancies. It also filed a similar motion in the sewer case. On June 15, 2001, the courts entered dismissal orders in both cases.

On May 21, 2002, appellant filed a seventh amended counterclaim reasserting its claims for intentional interference with its business expectancies against Eden Isle Corporation and Upton. Appellant took a nonsuit on its claim against Eden Isle Corporation. In that order, the circuit court stated: "It is recognized that Windsong's remaining causes of action in this case are directed solely against Richard Upton." Appellant filed an eighth amended counterclaim against Upton. After Upton moved to dismiss the seventh and eighth amended counterclaims, the circuit court entered an order stating that it would consider the motion to dismiss as a motion for a more definite statement and gave appellant a period of time within which to file an amended counterclaim against Upton.

Appellant filed its "Restated Complaint" against Upton on January 10, 2003, stating that Upton had influenced Eden Isle

Corporation to impose certain conditions to be met by appellant for the development of Southwinds in order to resolve appellant's dispute with Eden Isle Corporation and that those conditions were, in fact, Upton's "personal expectations." Appellant stated:

> 10. Mr. Upton knew of Windsong's development plans which were consistent with the existing development in the area and with the existing provisions of the Bill of Assurance. Armed with this knowledge, Mr. Upton, whether through his personal initiation or through the exercise of his necessary approval, repeatedly caused the Bill of Assurance and Dedication to be amended, revised and, ultimately, rewritten, all to Windsong's detriment. He manipulated Eden Isle Corporation to act adversely to Windsong and otherwise tortiously interfered with Windsong's contractual rights and business expectancies. Since Windsong's purchase, Mr. Upton supported a limitation on Windsong's rights to services, thwarted its ability to subdivide the property, undertook offensive activities on lands adjacent to Windsong's property and imposed new restrictions on the use for Windsong's property.

> 11. Mr. Upton's actions were specifically intended to restrict the usage of Windsong's property and to interfere with its contractual relationships and business expectancies. . . .

Upton moved for summary judgment, arguing that appellant's restated complaint was barred by the doctrine of *res judicata* because appellant had twice nonsuited essentially identical claims for tortious interference with a business expectancy in this case and in the sewer case, and that, according to Ark. R. Civ. P. 41(b)(2), when the restated complaint was filed, there had already been a decision on the merits of these claims. Upton argued that, although he was not a named party in the sewer case, he was a privy of Red Apple Enterprises for purposes of *res judicata*. Upton also asserted that, because the plat and bill of assurance could be lawfully amended at any time and appellant's boat-dock application was subject to approval by the United States Army Corps of Engineers, any expectancy appellant had was subject to a contingency. Upton further argued that the restated complaint contained no factual allegation sufficient to justify the piercing of the corporate veil of the business entities in which he serves as an officer, director, stockholder, or manager. Additionally, Upton argued that collateral estoppel applied to the court's final order in the sewer case,

wherein the court found that appellant had acknowledged that it did not have a comprehensive development plan for Southwinds and that it intended to develop the property on a lot-by-lot basis. Upton further argued that the tort of intentional interference with the use and enjoyment of property does not exist under Arkansas law. In his supporting affidavit, Upton stated that his understanding was that the bill of assurance could be amended at any time for any nondiscriminatory purpose. He also said that he had not attempted to hinder Southwinds's sewer access or service and that he had not interfered with the creation and sale of lots in Southwinds.

In response to the motion for summary judgment, appellant argued that the doctrine of *res judicata* does not apply to interlocutory orders. It also asserted that, because the sewer case involved Red Apple Enterprises and not Upton, *res judicata* did not apply. It further argued that whether a corporation is distinct from its shareholders was not relevant because its claims were against Upton, individually, and not against a business entity. Additionally, appellant stated that it had not alleged tortious interference with the use of its property. In support of its response, Windsong filed the affidavits of its owners, Ronald McKenzie and Mark McKenzie. On June 11, 2003, the circuit court awarded summary judgment to Upton without stating the basis for its decision. This is the second appeal from that decision. On October 29, 2003, we dismissed the first appeal for lack of a final order. After our dismissal of the first appeal, the circuit court granted the motion for voluntary nonsuit of Red Apple Enterprises on its cross-claim against appellant. This appeal followed.

The standard of review for this appeal from the entry of summary judgment is well settled. Summary judgment is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *State Farm Mut. Auto. Ins. Co. v. Henderson*, 356 Ark. 335, 150 S.W.3d 276 (2004). In considering whether to grant summary judgment, we consider pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any. *Curley v. Old Reliable Cas. Co.*, 85 Ark. App. 395, 155 S.W.3d 711 (2004). Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Id.*

In its brief, appellant addresses all of the grounds on which Upton based his motion for summary judgment and argues that none of them are sustainable. Because we are reversing on the business expectancy issue, we need not address the other points on appeal.

To establish a claim of tortious interference, a plaintiff must prove: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001). It is also necessary that the defendant's conduct be improper. *Id.* For guidance as to what is improper, the *Restatement (Second) of Torts* § 767 (1979) states that the court should consider (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. *Vowell, supra; Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001).

Here, appellant purchased its property when it was zoned for multifamily use with the express intention of developing it for that purpose. It is true that the subdivision's bill of assurance could be amended at any time by a majority of the landowners. Nevertheless, we cannot say that purchasing property that was zoned for multifamily use with the intention of building multifamily dwellings was not, as a matter of law, a valid business expectancy in this situation. In our view, appellant sufficiently demonstrated the existence of genuine issues of material fact on all of the elements of a claim for tortious interference with a business expectancy, and those issues should be tried. We therefore hold that the circuit court erred in granting summary judgment to Upton and reverse and remand for trial.

Reversed and remanded.

BIRD, GRIFFEN, VAUGHT, CRABTREE, and ROAF, JJ., agree.

GLADWIN, ROBBINS, and NEAL, JJ., dissent.

J OHN B. ROBBINS, Judge, dissenting. I dissent from the majority opinion for the reason clearly stated in Judge Neal's dissent, but write separately to make the following additional observation.

The summary judgment which our court reverses today was granted by the trial court without explanation. Upton had sought summary judgment on four separate bases. All four arguments are addressed in the appellate briefs. Our substituted opinion deals only with the validity of appellant's business expectancy. The other three bases asserted by Upton, *i.e.*, res judicata, piercing the corporate veil, and tortious interference with land use, are not discussed. If summary judgment was correctly granted on any of those four grounds, our court would be obliged to affirm. I offer no comment on the validity of these other bases, inasmuch as I would affirm for the reason discussed in Judge Neal's dissent, however, our appellate review is incomplete if we *reverse* without disposing of the other bases that Upton asserted would support a summary judgment.

O LLY NEAL, Judge, dissenting. I dissent from the majority opinion because it is inconsistent with a previous supreme court decision dealing with this issue, *Donathan v. McDill*, 304 Ark. 242, 800 S.W.2d 433 (1990). In that case, Donathan hired Hot Springs Title Company to research the title to a parcel of land he wished to buy that was to be sold for nonpayment of taxes. At the tax sale, Donathan and McDill, the president of Hot Springs Title Company, both bid on the land, and Donathan's bid was accepted. After the sale, McDill informed the owner of the land about the sale and the statutory right to redeem. Using his own money channeled through an account of Hot Springs Title Company, McDill redeemed the land on behalf of the owner and then negotiated with the owner to purchase the land. Donathan sued McDill and Hot Springs Title Company for tortious interference with a business expectancy. The circuit court entered summary judgment for McDill and Hot Springs Title Company, and the supreme court affirmed with this explanation:

> Donathan, probably correctly, did not allege a fiduciary relationship. His action was based solely on the tort of interference with a business expectancy. We have recognized the tort. *Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 671 S.W.2d 178 (1984); *Walt Bennett Ford, Inc. v. Pulaski County Special School Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981). It consists of these elements: (1) a valid business expectancy (2) of which the defendants knew and (3) with

which they intentionally interfered (4) causing a loss of the expectancy and (5) resulting damages.

Donathan's business expectancy was to purchase the land in question for $2800 from the commissioner unless the owner made a timely redemption. His expectancy was fulfilled. *No authority is cited holding, or even suggesting, that causing such a contingency as redemption to occur constitutes tortious interference* [emphasis added].

While we understand and might agree with Donathan's contention that some facts remain in dispute, we must agree with the trial court that none of them are material facts, given our conclusion that Donathan had no expectancy other than the one subject to the contingency which occurred.

304 Ark. at 243-44, 800 S.W.2d at 434.

I simply cannot understand how, in this case, appellant possibly had a valid business expectancy when the appellant in *Donathan v. McDill* did not. Here, it is undisputed that the bill of assurance could be amended at any time, so long as the proper procedure was followed. Therefore, following the supreme court's reasoning in *Donathan v. McDill*, appellant's business expectancy was to purchase land zoned for condominium use *unless* a sufficient number of the subdivision's landowners amended the bill of assurance, which was a contingency. *Donathan v. McDill* stands for the proposition that, as a matter of law, causing a contingency to occur does not constitute tortious interference.

The gist of appellant's claims against Upton is that Upton caused such a contingency to occur by engineering the amendment of the bill of assurance. In my opinion, if McDill's behavior did not amount to tortious interference with a business expectancy, Upton's behavior did not, either.

GLADWIN and ROBBINS, JJ., join.

SUPPLEMENTAL OPINION ON
DENIAL OF REHEARING JUNE 29, 2005

*Johnny Merritt Belew* and *Michael Stephen Bingham,* for appellant.

*Stuart W. Hankins,* for appellee.

JOSEPHINE LINKER HART, Judge. We delivered our opinion in this appeal from the grant of summary judgment in Cleburne County Circuit Court on June 1, 2005. Richard Upton has petitioned for rehearing, asserting that this opinion contains errors of fact and law. We deny the petition.

■ Regarding mistakes of fact, Upton asserts, and we acknowledge, that our June 1, 2005, opinion incorrectly states that Upton, rather than his various closely held corporations, was a predecessor in title and adjoining landowner to Windsong. Furthermore, we acknowledge our error in stating that Upton had inadvertently conveyed to Windsong some of the cart paths on the Red Apple Golf Course. In fact, as Upton points out, Windsong acquired the Southwinds property, which had been sold in foreclosure to American Holdings, LLC. However, we find these misstatements of fact are of no moment. Although Upton surmises that these facts were somehow instrumental in our decision not to find merit in Upton's *"res judicata"* and "piercing the corporate veil" grounds for summary judgment, for the reasons outlined below, this was simply not the case. It is simply a non sequitur for Upton to conclude that in identifying theories and questions of fact that should not have been disposed of by summary judgment, this court failed to consider arguments that we found to be meritless and that this court had shirked its duty to affirm the trial court if there was any tenable means to do so. Nonetheless, in the interest of clarity we will outline our reasons for rejecting Upton's remaining theories for sustaining the trial court's grant of summary judgment.

■ Regarding Upton's *"Res Judicata"* argument, the doctrine of *res judicata* has two aspects: claim preclusion and issue preclusion. *See Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.,* 79 Ark. App. 43, 84 S.W.3d 47 (2002). The purpose of the *res judicata* doctrine is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a

second time. *Id.* Under the claim-preclusion aspect of the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *Id.* The key question regarding the application of *res judicata* is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Id.*

In our view, the privity-of-parties question is simply not clear enough to say that, as a matter of law, *res judicata* bars appellant's claims. Upton was not a named party in the sewer case and, unless it can be demonstrated as a matter of law that he was in privity with Red Apple Enterprises, the dismissal in the sewer case cannot be *res judicata* as to the claims asserted against Upton personally in this lawsuit. Although Upton's affidavit reflected that he was the sole shareholder of United Resorts, Inc., which was the corporate general partner of Red Apple Enterprises, and that Upton also owned a 100% interest in Island Enterprises, which was a limited partner in Red Apple Enterprises, Upton, as an individual, did not own any shares in Red Apple Enterprises.

Privity of parties within the meaning of *res judicata* means a person so identified in interest with another that he represents the same legal right. *Spears v. State Farm Fire & Cas. Ins.*, 291 Ark. 465, 725 S.W.2d 835 (1987). Precisely identical parties are not required; a substantial identity is sufficient. *See Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003); *Terry v. Taylor*, 293 Ark. 237, 737 S.W.2d 437 (1987). In *Arkansas Department of Human Services v. Dearman*, 40 Ark. App. 63, 68, 842 S.W.2d 449, 452 (1992), we explained:

> It has been suggested that privity is merely a word used to say that the relationship between one who is a party and another person is close enough that a judgment that binds the one who is a party should also bind the other person.... It has also been held that the identity of parties or their privies for *res judicata* purposes is a factual determination of substance, not mere form.

(Citations omitted.) The fact that an individual owns stock in a corporation does not, in itself, create privity between the individual and the corporation. *Walthour v. Finley*, 237 Ark. 106, 372 S.W.2d 390 (1963). Given the substantial amount of proof offered by Upton to support his contention that he is separate in identity from Red Apple Enterprises and his other businesses, we cannot say as a matter

of law that Upton and Red Apple Enterprises are so identified in interest that they represent the same legal right. Therefore, the summary judgment cannot be affirmed on the basis of *res judicata*.

■ Upton also argues that the so-called "corporate veil" justified the granting of summary judgment. We rejected this ground because we agree with Windsong that there is a question of fact regarding Upton's personal involvement, and in this context, it is irrelevant whether a corporation is separate and distinct from its shareholders. Windsong points out that its claim is not that any business entity acted to interfere with its contractual relations and business expectancies but that Upton individually committed these tortious actions. A corporate agent may be held personally liable for torts committed in the corporate capacity. *See Torchmark Corp. v. Rice*, 945 F. Supp. 172 (E.D. Ark. 1996). When it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued. *McGraw v. Weeks*, 326 Ark. 285, 930 S.W.2d 365 (1996). *See also Cash v. Carter*, 312 Ark. 41, 847 S.W.2d 18 (1993). Because we cannot hold, as a matter of law, that Upton could not be personally liable on appellant's claims, the summary judgment for Upton also cannot be affirmed on this ground.

■ As a final basis on which Upton moved for summary judgment, he asserted that Windsong's complaint asserted a cause of action for intentional interference with the use and enjoyment of property, a tort that is not recognized by the courts of this state. *See Carmical v. McAfee*, 68 Ark. App. 313, 7 S.W.3d 350 (1999). We hold that this was simply a "straw man" argument in that we interpreted Windsong's pleadings only to assert the cause of tortious interference with a business expectancy.

■ Finally, we reject out-of-hand Upton's suggestion that this court somehow erred in not distinguishing *Donathan v. McDill*, 304 Ark. 242, 800 S.W.2d 433 (1990). We are not aware of anything that requires us to cite inapposite authority.

For the foregoing reasons, Upton's motion for rehearing is denied.

BIRD, GRIFFEN, VAUGHT, CRABTREE, and ROAF, JJ., agree.

GLADWIN, ROBBINS, and NEAL, would grant.