**Opinion filed March 26, 2015**



### In The

# Eleventh Court of Appeals

_____

### No. 11-13-00060-CR

_____

## ASHLEY JACK CODY HENDERSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 39th District Court
### Haskell County, Texas
### Trial Court Cause No. 6547

---

### M E M O R A N D U M   O P I N I O N

The jury convicted Ashley Jack Cody Henderson of the offense of possession of a controlled substance, oxycodone, in an amount of four grams or more but less than 200 grams. The second-degree felony offense was enhanced by a prior felony conviction, and the trial court assessed Appellant's punishment at confinement for sixty years. On appeal, Appellant first claims that the trial court

erred when it overruled his objections to the introduction of evidence seized in the search of a vehicle. In his second issue on appeal, Appellant claims that, because the State failed to link him to the drugs, the evidence is insufficient to show that he knowingly and intentionally possessed oxycodone. We affirm.

Undercover Dallas police officers suspected Appellant was responsible for burglaries in the Dallas area. On October 19, 2011, they obtained a warrant to attach a mobile tracking device to a black Acura that they had seen Appellant drive. Appellant was named as the owner/possessor of the Acura. After the officers placed the tracking device on the Acura, they began to monitor its location.

In the early morning hours of November 4, 2011, the tracking device showed that the Acura had been driven to a location in Haskell. Later that evening, Dallas officers telephoned Haskell authorities and determined that a burglary had occurred at that location early that morning; a drugstore known as "The Drug Store" had been burglarized.

The Drug Store is equipped with an "audio box" that allows the Haskell County dispatcher to hear voices in the store. The audio box is activated when employees leave the store. The store is also equipped with an alarm. The alarm beeps at first until someone enters the alarm code, and if no one enters the code, the alarm sounds.

Christina Stevens was working as a dispatcher for the Haskell County Sheriff's Department in the early morning hours of November 4. The audio box in the drugstore had been activated, and from it, she heard the beeping of the alarm and then the alarm sound. She also heard a voice ask something like, "Did you get it all?" She heard another voice answer, "Yes." She dispatched an officer to The Drug Store.

Officer Daniel Kaszuba was dispatched to The Drug Store. He arrived around 5:45 or 6:00 a.m. Officer Kaszuba noticed that the lock had been removed

2

from the front door and was lying in the parking lot. Officer Kaszuba called for assistance and then secured the building.

Jeffrey Caparoon was a sergeant with the Haskell Police Department at the time of the burglary. He was one of the officers who responded to assist at The Drug Store that morning. He obtained and viewed DVDs from the continuously recording eight video cameras that were located in various places inside the store.

Lonnie Meredith, the owner of The Drug Store, was notified of the burglary around 6:00 a.m. on November 4. When Meredith arrived at the store, he noticed that a trash can was missing. He also noticed that a cabinet where controlled substances, such as Oxycontin, were kept had been opened and that most of the contents had been removed. The Drug Store kept an inventory, and from that inventory, Meredith always knew the amount of inventory "to the tablet." Among the missing inventory were 537 15-milligram tablets of oxycodone (a generic form of Oxycontin) and 300 60-milligram tablets of Oxycontin.

When the Dallas officers telephoned Haskell authorities on the evening of November 4, they also told them that, after the Acura had stopped at The Drug Store, it stopped for twenty-two minutes on Marrs Road about eight miles outside Haskell and for eight minutes at an Allsup's convenience store in Throckmorton.

The record reflects that Haskell law enforcement officers went to the Marrs Road location to which the Dallas police had directed them. There, the officers found a white trash can like the one taken in the burglary, and they also found papers related to The Drug Store. Because the tracking device showed a stop at Allsup's in Throckmorton, they also obtained surveillance videos from the Allsup's store.

By this time, Haskell officers had been told that Appellant was the person in the vehicle that the Dallas officers had been tracking. Officers had also received a photo ID from Appellant's drivers license.

3

Winston Stephens, Chief Deputy with the Haskell County Sheriff's Department, testified that the DVDs from The Drug Store showed that one of the men in the video wore a distinctive cap, tennis shoes, and "hoodlum mask."

Haskell County law enforcement officers obtained arrest warrants for Appellant and a man named Wheelis. Although arrested, Wheelis was later eliminated as a suspect.

Law enforcement officers from Haskell County requested that Dallas officers assist them in locating Appellant. After Dallas police located Appellant, Sergeant Caparoon and Deputy Stephens traveled to Dallas to execute the warrant.

Dallas police officers found the black Acura at an extended stay motel; they were the ones who executed the warrant. Upon entry into Appellant's motel room, Deputy Stephens noticed, among other things, a hat, shoes, and mask like those depicted in the video from The Drug Store surveillance DVDs. These items were later admitted into evidence at Appellant's trial.

The black Acura was parked in the parking lot at the motel. Officers searched the Acura and found pills, tools, and a pair of gloves. These items were also admitted into evidence.

Prior to Appellant's trial, Shawn Barber pleaded guilty to burglary of The Drug Store and to possession of oxycodone taken from there. He received a twelve-year plea bargain in exchange for his testimony against Appellant. At Appellant's trial, Barber testified that he participated in the burglary of The Drug Store on November 4, 2011, along with Appellant; they came from Dallas. In his testimony, Barber basically confirmed the physical evidence, the video evidence, and the mobile tracking device evidence. Barber admitted that he and Appellant possessed the drugs that they took from The Drug Store at least from the time they took them until they returned to Dallas.

4

We will first address Appellant's second issue in which he challenges the sufficiency of the evidence to link him to the drugs found in the Acura. He argues that the absence of any affirmative evidence that linked him to the drugs in the Acura "mitigates against a finding that he possessed the contraband [made] the basis of his charged offense. Appellant then concludes that, although a rational jury could have determined that he burglarized The Drug Store, "it did not necessarily follow that he exercised care, custody, control or management of narcotics found in his automobile four days later or that he knew the very same narcotics were in that automobile when it was searched." "Accordingly," Appellant concludes, "the evidence was insufficient to support [Appellant's] conviction for possession of a controlled substance."

To convict Appellant of unlawful possession of a controlled substance, the State was required to prove that Appellant exercised control, management, or care over the substance and that Appellant knew the thing possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The "affirmative links" rule is related to proof of control, management, care, and knowledge in connection with the contraband that an accused is charged with possessing. The rule protects an "innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406.

In its brief, the State correctly notes that Appellant was not charged with possession of the drugs found in the Acura. Appellant was charged in Haskell County for possession of drugs as shown in the video taken during the burglary and confirmed by Meredith's testimony, the information recorded by the mobile tracking device, the evidence found in Appellant's motel room when the Dallas officers arrested him, and Barber's testimony. There has been no challenge to the sufficiency of that evidence other than the argument that the failure to link Appellant to the drugs found in the Acura "mitigates against a finding that he

5

possessed the contraband [made] the basis of his charged offense." We overrule Appellant's second issue on appeal.

In his first issue on appeal, Appellant argues that "[t]he denial of [his] objection to the introduction of evidence obtained from [the] search of his car was error because there was no probable cause to believe the vehicle contained evidence of criminal activity." Specifically, Appellant complains of the admission of State's Exhibit No. 2 (mechanic's gloves), State's Exhibit No. 4 (a pill bottle), and State's Exhibit No. 33 (burglary tools). Dallas police obtained all of those items when they searched the black Acura in Dallas.

When the State offered the gloves and the pill bottle into evidence, Appellant objected that the State had not established a proper chain of custody. The trial court overruled the objection and admitted the two exhibits. Later, Appellant asked the trial court to "unadmit" the two exhibits. The basis for his request to "unadmit" the two exhibits was that there had been no showing of probable cause to search the Acura; that is also an argument that he makes on appeal. However, as the State argues, this objection was not timely in the trial court, and it cannot be made for the first time on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also* TEX. R. EVID. 103(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Further, the legal basis of a complaint raised on appeal must comport with the complaint raised in the trial court. *Wilson*, 71 S.W.3d at 349. Appellant's probable cause complaint leveled at the admission of the gloves and pill bottle is overruled.

In the trial court, Appellant did object, on probable cause grounds, to the admission of the burglary tools found in the Acura. When the totality of the circumstances allows for a conclusion that there is a fair probability that contraband or evidence will be found at a particular location, then probable cause to search exists. *Illinois v. Gates*, 462 U.S. 213 (1983); *Dixon v. State*, 206 S.W.3d

613, 616 (Tex. Crim. App. 2006). There was no search warrant in this case. Searches conducted without a warrant are per se unreasonable absent a few specific well-delineated exceptions. One of those exceptions is the "automobile exception." *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Barnes v. State*, 424 S.W.3d 218, 224 (Tex. App.—Amarillo 2014, no pet.). Under the automobile exception, officers "may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). The court in *Neal* wrote that police "may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime. Probable cause to search exists when there is a 'fair probability' of finding inculpatory evidence at the location being searched." *Neal*, 256 S.W.3d at 282 (footnote omitted).

There is no question but that the Acura was readily mobile; Dallas officers had been tracking it for some time in connection with burglaries in Dallas. Further, officers knew that the Acura was at The Drug Store around the time that the store was burglarized, and they had the DVD recordings of the burglary. They also knew that, after the burglary, the Acura had been driven to the location on Marrs Road where officers found items connected to The Drug Store. Additionally, when officers entered Appellant's motel room, they noticed a hat, shoes, and a mask that resembled the hat, shoes, and mask worn during the burglary of The Drug Store as depicted in the surveillance DVDs from The Drug Store. Dallas officers also knew that, not long after the burglary, the Acura stopped at an Allsup's convenience store in Throckmorton, the town through which the officers had tracked the Acura as it was being driven to and from Haskell on November 4. When a court determines whether probable cause to search exists, it considers the totality of the circumstances. *Fineron v. State*, 201

S.W.3d 361, 367 (Tex. App.—El Paso 2006, no pet.). The combined information known to all the officers at the time of the search is to be considered in a probable cause determination. *Id.*

We hold that the totality of the circumstances that we have outlined above allows for a conclusion that there was a fair probability that contraband or evidence would be found in the Acura. For all of those reasons, we believe that the officers had probable cause to search the Acura without a warrant. We overrule Appellant's first issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


March 26, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.