Andrew STURGIS and Vanessia Sturgis *v.*
Theodore C. SKOKOS and Randy Coleman

98-299 977 S.W.2d 217

Supreme Court of Arkansas
Opinion delivered November 5, 1998

[Petition for rehearing denied December 10, 1998.]

44

*Timothy O. Dudley* and *Sloan, Rubens & Peeples*, by: *Kent J. Rubens*, for appellants.

*Wright, Lindsey & Jennings LLP*, for appellee Theodore Skokos.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Glenn W. Jones, G. Spence Fricke*, and *D. Keith Fortner*, for appellee Randy Coleman.

DAVID NEWBERN, Justice. This appeal concerns an action for attorney malpractice. The appellants, Andrew and Vanessia Sturgis, alleged that the appellees, Theodore C. Skokos and Randy Coleman, mishandled the Sturgises' defense and counterclaim in a Jefferson County foreclosure action that originated in 1988. The Sturgises filed their malpractice action in the Pulaski County Circuit Court in 1995. With one exception, all of the acts of negligence were alleged to have occurred more than three years earlier. The exception was an allegation of failure to timely lodge the record in the foreclosure action with this court, resulting in dismissal of the appeal. Although the Sturgises argued that a five-year contracts statute of limitations applied, the Trial Court applied the three-year malpractice statute of limitations and, in addition, held that the failure to perfect the appeal was of no avail as there was no showing that an appeal in the foreclosure case would have succeeded. We affirm the summary judgments.

The 1988 action was brought against the Sturgises by National Bank of Commerce ("NBC") to foreclose on loans that were secured by real property. The Sturgises, at that time represented by other counsel, denied liability and counterclaimed against NBC, asserting various theories of lender liability. The Sturgises discharged their original counsel, and on April 29, 1989, entered into a written representation agreement with Skokos, Coleman, and Rainwater, P.A. The Sturgises had been referred to Mr. Skokos, with whom they had their initial lawyer-client interview, but Randy Coleman acted as the primary attorney representing them, entering an appearance on their behalf on May 19, 1989. On July 26, 1989, Mr. Skokos also entered an appearance on their behalf. NBC's motion for partial summary judgment on the Sturgises' counterclaim of lender liability was

granted. The remaining issues were tried to Chancellor Fred Davis on June 6 and June 23 through June 26, 1991. More than two years later, on August 25, 1993, a decision favorable to NBC was rendered. Mr. Coleman filed a timely notice of appeal to the decision but failed to file the record in a timely manner, and the appeal was dismissed.

On April 14, 1995, the Sturgises filed suit in Pulaski County Circuit Court, alleging that Mr. Coleman and Mr. Skokos were negligent in their representation of the Sturgises because they did not tell them to pay the bank and then file suit in circuit court in order to get a jury trial on their lender-liability claims and did not tell them that they could ask that their counterclaim in chancery court be transferred to circuit court. The Sturgises also alleged that the attorneys were negligent because they failed to obtain affidavits to oppose NBC's summary-judgment motion, and failed to move for the recusal of the Chancellor who had financial ties to NBC. Finally, they alleged that the attorneys were negligent in failing to perfect their appeal. The Sturgises asserted that, due to the negligence of the attorneys, they had sustained damages in the form of attorney fees, interest on the bank debt, and loss of the lender-liability claim against NBC.

The defendants answered that the complaint was barred by the statute of limitations applicable to negligence actions. Defendant Skokos filed an affidavit stating that he had performed only 11.6 hours of work on the case up until May 8, 1990, and had not provided any legal services thereafter. He further stated that all trial preparations were done in the first half of 1991, when he was out of the country on military duty and not participating in the law practice.

The Sturgises amended their complaint to include a breach of contract claim, alleging that the lawyers contracted to represent them diligently but failed to do so. They incorporated the allegations made in the negligence count as the breach-of-contract allegations. They also alleged that they would not have entered into the contract but for the representations made by the lawyers. The amended complaint stated a third count of breach of fiduciary duty, alleging that Mr. Coleman had ties to Worthen Bank, which

owned NBC, at the time he represented the Sturgises in their suit against NBC, thus creating a conflict of interest that he did not reveal.

Mr. Skokos moved for summary judgment on the ground that, as a shareholder in a professional association, he could not be held liable for Mr. Coleman's negligence as he was protected by the Arkansas Professional Corporations Act. The Trial Court at first denied the motion, but upon its renewal, granted it. Mr. Coleman moved for summary judgment on the ground that all of the Sturgises' claims except the untimely attempt to lodge the record on appeal in the foreclosure action were barred by the statute of limitations. The motion was granted. The Trial Court also held that there was no showing that the failure to file the record proximately caused the injury to the Sturgises.

### 1. Breach of contract

■ ■ Motions for summary judgment are governed by Ark. R. Civ. P. 56, which provides that a party may move with or without supporting affidavits for a summary judgment upon all or any part of a claim. A summary judgment should be granted only when it is clear that there is no issue of fact to be litigated. *Ragar v. Brown*, 332 Ark. 214, 964 S.W.2d 372 (1998); *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 824 S.W.2d 387 (1992). The moving party has the burden of showing that there is no genuine issue of material fact; all proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). The movant must show entitlement to judgment as a matter of law. *Keller v. Safeco Ins. Co. of America*, 317 Ark. 308, 877 S.W.2d 90 (1994). Once the moving party has demonstrated *prima facie* that no material issue of fact remains, the defending party must respond, showing facts which would be admissible in evidence to create a factual issue. *Dixie Ins. Co. v. Joe Works Chevrolet, Inc.*, 298 Ark. 106, 766 S.W.2d 4 (1989). On appeal, we view the evidence in the light most favorable to the one against whom summary judgment was granted, *Young v. Paxton*, 316 Ark. 655, 873 S.W.2d 546 (1994), and determine if summary judgment was proper based on whether

the evidence presented by the movant left a material question of fact unanswered. *Keller v. Safeco, supra.*

■ The Sturgises argue that the Trial Court erred in applying the three-year statute of limitations, Ark. Code Ann. § 16-56-105 (1987), applicable to legal-malpractice claims, instead of the five-year statute of limitations, Ark. Code Ann. § 16-56-111 (1987), for breach of a written contract. It is well established that the three-year statute of limitations applies to legal malpractice actions. *Ragar v. Brown,* 332 Ark. 214, 219, 964 S.W.2d 372, 374 (1998). The Sturgises argued that, in the standard written fee agreement with the law firm, the lawyers promised that they would "proceed diligently" to represent them. They argue that the contract was breached when they acted negligently, that is, without diligence, and thus § 16-56-111 applicable to contracts should control.

The Sturgises rely on *Lemon v. Laws,* 313 Ark. 11, 852 S.W.2d 127 (1993), in which it was held that Ark. R. Civ. P. 18(a) permits a party to join as many claims as a party may have against an opposing party. Mr. Lemon's allegation of breach of contract was that his attorney, Mr. Laws, failed to put on proof to corroborate grounds for divorce. The same allegation supported his negligent-representation claim. We held it was error to have struck the breach of contract claim. No statute-of-limitations issue was involved.

■ In 2 R. MALLEN AND J. SMITH, LEGAL MALPRACTICE § 21.5 (4th ed. 1996), the authors explain that "for a contract statute of limitations to apply, there must be a breach of a specific promise." To determine the cause of action, we look to the facts alleged in the complaint to ascertain the area of the law in which they sound. *McQuay v. Guntharp,* 331 Ark. 466, 963 S.W.2d 583 (1998). If two or more statutes of limitation apply, generally the statute with the longest limitations period will govern. *Id.* at 470; *Loewer Farms v. National Bank of Ark.,* 316 Ark. 54, 870 S.W.2d 726 (1994).

The Sturgises' amended complaint reads as follows:

COUNT I — NEGLIGENCE:

Defendants were negligent in their representation of the plaintiffs in advising plaintiffs not to immediately pay the debt to the bank and then sue the bank in circuit court, where plaintiffs would be entitled to a jury trial, or file a counterclaim in chancery court and have it transferred to circuit court for trial after paying the debt to the bank. Defendants were also negligent in failing to obtain affidavits to oppose the bank's motion for summary judgment, in failing to move for the recusal of the Chancellor who heard the case on the grounds that the Chancellor had financial ties to the bank, and in failing to properly perfect the appeal. . . .

COUNT II — BREACH OF CONTRACT:

Defendants contracted to represent the plaintiffs diligently and competently. Defendants breached their contract by failing to do so for the reasons set forth above. Additionally, defendant Skokos breached his contract by failing to handle and try the case as he had promised the plaintiffs he would do. Plaintiffs would not have entered into the contract but for the representations of defendant Skokos.

In *O'Bryant v. Horn*, 297 Ark. 617, 764 S.W.2d 445 (1989), the plaintiff purchased farm equipment from the defendant. He alleged that the defendant had committed fraud in the course of the transaction, attaching a copy of the bill of sale to the complaint. An issue on appeal was whether the three-year statute of limitations that would be applicable to the fraud claim applied as opposed to the five-year statute governing written contracts. We held that the "gist" of the action, *i.e.*, fraud, as determined from the complaint was determinative that the three-year statute applied.

■ The complaint in this case obviously contained a claim of breach of contract. The question thus becomes whether the reference to diligence in the contract is the sort of specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement. We hold that it does not. The obligation to act diligently is present in every lawyer-client relationship. The violation of that obligation is, by definition, nothing more than negligence. Our conclusion that the gist of the action in this case is negligence is further supported by the

fact that the amendment of the complaint to state the contract claim was an obvious afterthought and was done apparently upon realization that, but for one, the negligent acts alleged all occurred more than three years prior to the filing of the complaint.

■ We affirm the holding that the negligent acts alleged to have occurred more than three years prior to the filing of the Sturgises' complaint were barred by the statute of limitations.

## 2. Promissory estoppel

The Sturgises contend that the Trial Court erred in refusing to hold that Mr. Skokos and Mr. Coleman were estopped from relying on the statute of limitations because they told the Sturgises that the Chancellor's decision in the foreclosure action and counterclaim would be reversed on appeal. The Sturgises claim they were thus induced not to investigate whether Mr. Skokos or Mr. Coleman had committed malpractice.

■ The record, as abstracted, reveals that the Trial Court did not rule on the issue and thus we may not address it. If a party raises an issue in response to a motion for summary judgment but fails to obtain a ruling on it, review of that issue is precluded on appeal. *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997).

## 3. Determination of success on appeal

Mr. Coleman admitted that he was negligent in failing to file the record on appeal in a timely manner, but he urged that an appeal would not have been successful. The Trial Court held that whether an appeal would have been successful is a question of law for the court, not the jury, to decide. The Sturgises challenge that ruling, citing *McDonald v. Eubanks*, 292 Ark. 533, 731 S.W.2d 769 (1987). In that case, the McDonalds hired an attorney to represent them in a personal-injury suit as plaintiffs. They lost their case, and the attorney failed to file an appeal. The McDonalds sued the attorney for negligence, and the attorney moved for summary judgment, claiming that the case was unwinnable on appeal. His motion was accompanied by affidavits from two other lawyers who supported that position. The Trial Court granted the sum-

mary-judgment motion, and the McDonalds appealed. We reversed and remanded because the conclusory statements made in the affidavits submitted in support of the motion were only "conclusory." In other words, construing the facts most favorable to the nonmovants, the McDonalds, the attorney's evidence was insufficient. We did not hold that the chance of success on appeal was an issue for a jury.

The majority rule is that the matter of proximate cause for failure to file an appeal is a question of law to be determined by a judge, not a jury. In *Daugert v. Pappas*, 704 P.2d 600, 603 (Wash. 1985), the Washington Supreme Court held that "the determination of what decision would have followed if the attorney had timely filed the petition for review is a question of law for the judge, irrespective of whether the facts are undisputed." *See also Millhouse v. Wiesenthal*, 775 S.W.2d 626 (Tex. 1989), and *Charles Reinhart Co. v. Winiemko*, 513 N.W.2d 773 (Mich. 1994). The *Reinhart* case, citing cases from Oregon, California, Illinois, New York, Louisiana, Minnesota, Arizona, Ohio, South Carolina, Washington, and Wisconsin, notes that "at least nineteen jurisdictions directly addressing the issue have found it to be one of law, and no reported decisions have held otherwise." 513 N.W.2d at 783.

Although we have no Arkansas case directly on point, we held in *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996), that an attorney's failure to file a motion to set aside an arbitration award in the proper forum was not shown, as a matter of law, to have been the proximate cause of the appellant's damages. We consider that decision and the majority rule to which we have referred above to be correct because the prospect of success or lack of it in a judicial proceeding poses an issue upon which the expertise of the court is needed for decision.

### 4. The ruling on appellate success

The Sturgises argue that, even if the issue of success on appeal is held to pose an issue of law, reversal should follow because they would indeed have succeeded in their appeal, had the record been filed in a timely manner. In reviewing this issue, it

was incumbent upon the Trial Court to act as an appellate court would act and review the decision under the same standard this Court would use. In a chancery case we conduct a *de novo* on the record to determine whether the factual findings of the Chancellor were clearly erroneous, or whether the result reached was arbitrary or groundless. *Webber v. Webber,* 331 Ark. 395, 962 S.W.2d 345 (1998).

### a. Ambiguity of the instrument

The Sturgises argue that the Chancellor failed to apply the established rule of law that an ambiguity in an instrument is construed against the drafter. The foreclosure action concerned a credit agreement between the Sturgises and NBC executed on June 14, 1985. It was executed using a pre-printed form with certain typewritten provisions concerning the amounts of the obligation, the interest rate, the security, and the following statement with respect to the terms of repayment:

> $675,000 line of credit for twelve months at NBC prime plus 1% adjusted quarterly with monthly interest and rights of renewal for two additional years. Repayment will be $200,000 due January, 1986; $237,500 due January, 1987; and $237,500 due April, 1988.

The Chancellor's letter opinion dated June 16, 1993, stated:

> 7. While some of the terms appear ambiguous, the $675,000 promissory note dated June 14, 1985, contains unambiguous repayment terms.

> 8. The parties treated the note as unambiguous repayment terms of the June 14, 1985 note as a mechanism for repaying that loan and acted in a manner consistent therewith.

> 9. That the promissory note dated June 14, 1985, does not contain language which would allow a pay down/borrow back feature as would be necessary to constitute a revolving line of credit.

The Sturgises focus on that portion of paragraph seven which states that "some of the terms appear ambiguous." They argue the Chancellor did not apply the proper rules of construction to ambiguous instruments, citing *Stacey v. Williams,* 38 Ark. App.

192, 834 S.W.2d 156 (1992), which holds that ambiguities in a contract are construed strictly against the drafter of the contract. Further, if there is an ambiguity between printed provisions and typewritten provisions, typewritten provisions prevail over printed ones. *Id.*, citing *Leonard v. Merchants and Farmers Bank*, 290 Ark. 571, 720 S.W.2d 910 (1986). The typewritten portion provided that the instrument was a "line of credit" and the plaintiffs state that language is not ambiguous. They argue that, if there is any ambiguity, it is in the terms of the provision. Thus, if the provision had been construed against the bank and all doubts resolved in favor of plaintiffs, the Chancellor would have been obligated to find that the instrument constituted a line of credit.

We do not agree with that analysis. While it is true that the Chancellor did not recite the rule requiring an ambiguity to be construed in favor of the party who did not draft the agreement and against the party who did, we cannot say that the Sturgises would have prevailed in view of the Chancellor's recitations concerning the conduct of the parties and the clear repayment provisions. The Chancellor found that the note contained unambiguous repayment terms, and that the Sturgises and NBC treated the terms as a means of repaying the loan and acted consistent with those provisions.

 In *Rad-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 556, 713 S.W.2d 462 (1986), which concerned conflicting clauses in a contract, we wrote:

> In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. The object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement.

*Id.*, citing *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973). If there is an ambiguity, a court will accord considerable weight to the construction the parties themselves give to it, evidenced by subsequent statements, acts, and conduct. *Id.* at 555. The Chancellor found that the Sturgises made pay-

ments in accord with the typewritten provision, and when they needed more money, they filled out additional loan documents and signed new promissory notes. If the instrument had evidenced a line of credit, they would simply have paid the principal amount down and then again drawn upon it when they needed more money. The properly admitted testimony seems to resolve the ambiguity, based upon the actions of the parties. Thus, the appellants cannot show that the Chancellor would have been reversed on this issue. *See also Tyson Foods, Inc. v. Adams,* 326 Ark. 300, 930 S.W.2d 374 (1996).

### b. Conflict of interest

██ ██ The Sturgises argue that the Trial Court erred in holding that the Chancellor would not have been reversed for refusing to recuse in the case. The rule on recusal is set out in the recent case of *Turner v. State,* 325 Ark. 237, 244, 926 S.W.2d 843 (1996). A judge is required to recuse from cases in which his impartiality might reasonably be questioned under Arkansas Code of Judicial Conduct, Canon 3E(1). There is a presumption of impartiality, and the party seeking disqualification bears the burden of proving otherwise. The decision to recuse is within the judge's discretion, and it will not be reversed absent an abuse of that discretion. An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Id. Noland v. Noland,* 326 Ark. 617, 932 S.W.2d 341 (1996), also explains that "a chancellor shall not sit on the determination of any cause or proceeding in which he or she is interested, or related to either party within the fourth degree of consanguinity or affinity, or shall have been of counsel." *Id.* at 619, citing Ark. Code Ann. § 16-13-312 (1987), and Ark. Const., art. 7, § 20. A personal proprietary or pecuniary interest or one affecting the individual rights of the judge is an interest which will disqualify a judge; however, to be disqualifying, the prospective liability, gain, or relief to the judge must turn on the outcome of the suit. *Id.,* citing *Mears, County Judge v. Hall,* 263 Ark. 827, 569 S.W.2d 91 (1987).

At the Sturgises's request, Mr. Coleman wrote a letter to the Chancellor inquiring about his relationship with NBC, and the Chancellor replied that, although he had done business with

Worthen Bank, NBC's parent company, in the past and currently had an auto loan with them, he would not allow it to influence his decision in the case at hand and to let him know if Mr. Coleman's clients had any objection. There was no reply.

 The Sturgises focus on the appearance of impropriety standard, to which we have referred, but they do not point to any bias or prejudice on the part of the Chancellor, and do not show that the Chancellor had any possibility of gain or loss dependent on the outcome of the suit. In these circumstances, we cannot say the Trial Court should have held that the Chancellor's decision would have been reversed on appeal because of an abuse of his discretion in deciding not to recuse.

### c. Fraud claim

In the Sturgises's counterclaim against NBC, Count IV was captioned "intentional tort" and alleged fraud and promissory estoppel on the part of NBC Vice-President Jim Keith. NBC moved for summary judgment on that claim, and in response the Sturgises submitted the affidavit of Andrew Sturgis to the effect that Mr. Keith had misrepresented NBC's intent to lend an additional sum of money that was not forthcoming. The Chancellor granted summary judgment to NBC. The Sturgises contended that the Chancellor would have been reversed on that ruling. Mr. Coleman moved for summary judgment on that point. In response, the Sturgises merely stated their conclusion without reference to any specific supporting documentation alleging with particularity any unresolved issues of material fact.

 The burden of raising a factual issue in response to Mr. Coleman's summary-judgment motion was on the Sturgises. According to Ark. R. Civ. P. 56(e), "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." The Sturgises merely appended "Exhibit 9" of the underlying suit, which included the affidavit of Andrew Sturgis submitted to the Chancellor and the Plaintiffs' Response to Motion for Summary Judg-

ment, and stated that "[t]he Court can determine for itself whether the affidavit raised factual issues." The Trial Court did not err in granting summary judgment to Mr. Coleman in view of this insufficient response.

## 5. Limited liability

The Sturgises argue error in the holding that Mr. Skokos was not subject to liability as a shareholder in a professional association in view of the fact that he personally participated in the representation and shared in fees generated by appellee Mr. Coleman in the course of the representation. The Trial Court held that Mr. Skokos could not be held liable for the negligent acts of Mr. Coleman because Mr. Skokos was a shareholder in a professional association and thus was protected from liability by the Arkansas Professional Corporations Act, which provides:

> (a) No person shall be personally liable for any obligation or liability of any shareholder, director, officer, agent, or employee of a professional corporation solely because such person is a shareholder, director, officer, agent, or employee of such professional corporation.

Ark. Code Ann. § 4-29-101 (Repl. 1996).

In view of our conclusions that the claims against Mr. Coleman are either barred by the statute of limitations or properly decided, there is little left to say about any vicarious liability Mr. Skokos may have had for negligent acts allegedly done by Mr. Coleman. We note, however, the Sturgises' citation of *First Bank & Trust Co. v. Zagoria*, 250 Ga. 844, 302 S.E.2d 674 (1983), in which the Supreme Court of Georgia disregarded Georgia's statute similar to § 4-29-101 and declined to honor the protection offered by the professional association form of law practice. In *Henderson v. HSI Financial Services, Inc.*, 266 Ga. 844, 471 S.E.2d 883 (1996), the Supreme Court of Georgia stated:

> Today we overrule *Zagoria* to the extent it states that this court, rather than the legislative enabling act, determines the ability of lawyers to insulate themselves from personal liability for acts of other shareholders in their professional corporation. Although this court defines whether lawyers may practice their profession

in a partnership, professional corporation, or other group structure, the relevant statutes govern whether a particular structural form provides its members with exemptions from personal liability.

■ Thus, even if it were necessary in the circumstances presented here for us to consider disregarding Mr. Skokos's claim of immunity with respect to liability for Mr. Coleman's actions we could not do it on the basis of the case cited.

Affirmed.