SLIP OPINION

Cite as 2017 Ark. 83

# SUPREME COURT OF ARKANSAS

No. CV-16-430

| | |
|---|---|
| FELICIA FARRIS, M.D<br><br>APPELLANT<br><br>V.<br><br>CYNTHIA L. CONGER, C.P.A., D/B/A<br>CONGER WEALTH MANAGEMENT<br>AND CYNTHIA L. CONGER,<br>INDIVIDUALLY<br><br>APPELLEES | Opinion Delivered: March 9, 2017<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[60CV-13-4022]<br><br>HONORABLE CATHLEEN V.<br>COMPTON, JUDGE<br><br>REVERSED AND REMANDED;<br>COURT OF APPEALS OPINION<br>VACATED. |

**JOSEPHINE LINKER HART, Associate Justice**

Felicia Farris, M.D., appeals from the circuit court's decision to grant summary judgment in favor of Cynthia L. Conger, C.P.A., both individually and d/b/a Conger Wealth Management (Conger). The circuit court found that Farris's complaint sounded in negligence, and consequently, her cause of action was barred by the three-year statute of limitations applicable to negligence claims. On appeal, Farris argues that her complaint sounded in contract and thus was subject to the five-year statute of limitations, making her cause of action timely. We reverse the decision of the circuit court.[1]

Farris filed an initial complaint on October 10, 2013, and an amended complaint on October 14, 2013. In the amended complaint, Farris alleged that in 2005 she entered into a contract with Conger. The contract was attached to the amended complaint and was styled

---

[1]We vacate the decision of the Arkansas Court of Appeals, *Farris v. Conger*, 2016 Ark. App. 230, 490 S.W.3d 684.



"Wealth Management Agreement." According to the amended complaint, Farris learned on November 11, 2008, that a five-acre tract adjoining her property would be sold at a foreclosure sale on November 14, 2008. Farris arranged to purchase the property by paying off the mortgage and delinquent taxes prior to foreclosure. On November 12, 2008, Farris sought to have Conger transfer sufficient funds from Farris's Fidelity Investment Account, which was managed by Conger, to Farris's personal checking account at the Bank of Fayetteville so that Farris could close the transaction prior to the foreclosure sale. The amended complaint alleged that Conger failed to transfer the funds to her personal checking account by the time of the foreclosure sale, and the property was sold to a third party. She further alleged that she was ultimately able to obtain the parcel at additional costs of $29,557.28. Farris alleged that Conger's actions forced her to liquidate her Fidelity Investment Account and that the account would have been worth an additional $126,969 had she not liquidated the account. Farris alleged that Conger had exclusive control over her Fidelity Investment Account, and by "agreeing and assuring Dr. Farris that they would execute transfer of funds in a timely fashion so that the funds [would be] available to purchase the property and in failing to do so, [Conger] breached the written Wealth Management Services contract with Dr. Farris." Farris further alleged, "[Conger's] breaches of contract include, but are not limited to, failing to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely fashion and in compliance with Paragraph 5 of the written Wealth Management Agreement." After claiming that she suffered damages as a "direct and proximate cause of [Conger's] breach of contract," Farris also claimed that Conger's "breaches of duty constitute a reckless disregard for the circumstances and

attempted fraud on behalf of [Conger]." Farris requested that she be awarded punitive and exemplary damages to deter Conger and "others from such fraudulent and reckless behavior."

Paragraph 5 of the Wealth Management Agreement, provided in part as follows:

> **5. Execution of Brokerage Transactions.** Unless directed otherwise, we will arrange for the execution of securities brokerage transactions for the Assets through a broker-dealer that we reasonably believe will provide "best execution." In seeking best execution, the determinative factor is not the lowest possible commission cost but whether the transaction represents the best qualitative execution, taking into consideration the full range of the broker-dealer's services, execution capability, commission rates, and responsiveness. Consistent with seeking best execution, transactions for your Account may be effected through broker-dealers that provide us with research tools and/or other services (e.g., an online account management platform, portfolio management software, etc.) that assist in our investment decision-making process and with the management of our clients' accounts. While these tools and services shall generally be used to service all of our clients, all the tools and services may not be used to manage your particular Account. Directing transactions to broker-dealers that provide us with these types of tools and services shall occur only when we determine in good faith that the brokerage fees charged are reasonable in relation to the overall value of the brokerage and other services rendered. Accordingly, although we will seek competitive transactions fees for securities transactions, we may not necessarily obtain the lowest possible transaction rates for Account transactions.
> **Neither we, nor any of our Advisory Affiliates (as defined in Form ADV), will receive any portion of the brokerage commissions or transaction fees charged to you by the Broker-Dealer.**
> Transactions for each client account generally will be effected independently, unless we decide to purchase or sell the same securities for several clients at approximately the same time. We may (but are not obligated to) combine or "batch" such orders to obtain best execution, negotiate more favorable commission rates, or allocate equitably among our clients differences in prices and commissions or other transaction costs that might have been obtained had such orders been placed independently. Under this procedure, transactions will be averaged as to price and will be allocated among our clients in proportion to the purchase and sale orders placed for each client account on any given day. To the extent that we aggregate client orders for the purchase or sale of securities, including securities in which our Advisory Affiliates may invest, we shall do so in accordance with applicable rules promulgated under the Investment Advisers Act of 1940, as amended (the "Advisers Act") and guidance provided by the staff of the Securities and Exchange Commission. We shall not receive any additional compensation or remuneration as

a result of the aggregation. *We shall endeavor to process all Account transactions in a timely manner, but do not represent nor warrant that any such transaction shall be processed or effected by the Broker-Dealer on the same day as requested.*

(Emphasis added.) It is the first phrase in the last-quoted sentence, "We shall endeavor to process all Account transactions in a timely manner," that served as the basis for Farris's allegation that Conger had breached the contract.

Conger moved both for dismissal of the cause of action and for summary judgment, asserting that the cause of action sounded in the tort of negligence and thus was barred by the three-year statute of limitations for tort actions. Ark. Code Ann. § 16-56-105 (Repl. 2005). In its order granting summary judgment, the circuit court observed that Farris had argued that her cause of action was for a breach of contract, and thus the five-year statute of limitations applied. Ark. Code Ann. § 16-56-111. The court noted that the complaint had been filed beyond the three-year statute of limitations for tort claims but within the five-year statute of limitations for contract claims.

In its analysis, the court stated that while the complaint asserted a contract claim, the "question then becomes whether the reference to the contract is the sort of specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement." The court concluded that the "complaint was based upon a negligence claim cloaked as a contract claim." In reviewing paragraph 5 of the Wealth Management Agreement, the court observed that the "obligation to act diligently and in good faith is the basis of a fiduciary obligation," and the violation of that obligation is "nothing more than negligence," so the "gist of the action" was negligence.

The court further concluded that the transfer of funds was not a material part of the contract between the parties. The court stated, "Paragraph 5 provides guidance as to how Conger would execute transactions, but the execution of this specific real estate transaction was not a material breach of the contract" but instead a "negligent act." The court also noted that Farris presented the deposition testimony of her expert witness "on the basis of a breach of fiduciary responsibility." The circuit court certified the claim as immediately appealable under Rule 54(b) of the Arkansas Rules of Civil Procedure. Farris appealed, again arguing that her complaint was for a breach of contract, not a negligence claim; thus, it was timely under the five-year statute of limitations for contract claims.

Although the circuit court granted summary judgment, in reviewing the circuit court's analysis concerning its characterization of the nature of the claim and its application of a statute of limitations to bar the cause of action, we must look to the complaint itself. *McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 584 (1998). To determine the cause of action, we look to the facts alleged in the complaint to ascertain the area of the law in which they sound. *Sturgis v. Skokos*, 335 Ark. 41, 48, 977 S.W.2d 217, 220 (1998). We look to the "gist" of the action to determine which statute of limitations applies. *McQuay*, 331 Ark. at 470, 963 S.W.2d at 585. In order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and the defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach. *Rabalaias v. Barnett*, 284 Ark. 527, 528–29, 683 S.W.2d 919, 921 (1985). When the complaint contains a claim for breach of contract, the question is whether there is a specific promise that transforms the gist of the

SLIP OPINION

action from one for negligence into one for breach of the written agreement. *Sturgis*, 335 Ark. at 49, 977 S.W.2d at 221.

In this case, the circuit court looked to the language of Paragraph 5 of the Wealth Management Agreement and concluded that the gist of the action was negligence because the obligation to act diligently and in good faith is the basis of a fiduciary obligation and the breach of that obligation is negligence. We disagree.

Our analysis turns on the language of the amended complaint. The gist of Farris's amended complaint is that by "agreeing and assuring Dr. Farris that they would execute transfer of funds in a timely fashion so that the funds [would be] available to purchase the property and in failing to do so, [Conger] breached the written Wealth Management Services contract with Dr. Farris." Farris further alleged that Conger's breach of contract resulted from Conger's failure to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely fashion and in compliance with paragraph 5 of the written Wealth Management Agreement, which provided that Conger would "endeavor to process all Account transactions in a timely manner." Thus, Farris plainly alleged in her amended complaint that there was a contract between her and Conger, that Conger specifically promised to process the account transaction in a timely manner, that Conger breached this specific promise, and that Farris suffered damages. Further—and contrary to the circuit court's conclusion that the transfer of funds was not a material part of the contract between the parties—questions concerning whether paragraph 5 imposed an actionable obligation on Conger to timely transfer the funds, and whether Conger breached that obligation, are questions of contractual interpretation for the finder of fact.

In reaching its conclusion that the amended complaint sounded in negligence, the circuit court relied on *Sturgis*. In that case, the fee agreement between a law firm and its clients provided that the law firm would "proceed diligently" to represent them. This court held that the "reference to diligence in the contract" was not the "sort of a specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement" because the "obligation to act diligently is present in every lawyer–client relationship," the violation of which is negligence. *Id.* at 49, 977 S.W.2d at 222; *see also Kassees v. Satterfield*, 2009 Ark. 91, 303 S.W.3d 42 (involving a legal–malpractice complaint).

In contrast, Farris's amended complaint set forth Conger's specific promise under the contract. We are mindful that the amended complaint also described breaches of duty constituting a reckless disregard for the circumstances and attempted fraud; further the amended complaint asked for punitive and exemplary damages. Nevertheless, Farris's amended complaint also pleaded a breach of contract and a specific promise. Thus, we hold that the circuit court erred in failing to apply the five-year statute of limitations for contract claims. Accordingly, we reverse and remand the circuit court's decision for proceedings consistent with this opinion.

Reversed and remanded; court of appeals opinion vacated.

KEMP, C.J., dissents.

**JOHN DAN KEMP, Chief Justice, dissenting.** I would affirm the circuit court's grant of summary judgment because Farris's purported breach-of-contract action sounds in negligence, and her cause of action is time-barred by the three-year statute of limitations applicable to negligence claims. For these reasons, I respectfully dissent.

This court looks to the gist of the complaint to determine whether an allegation sounds in negligence or contract. *See, e.g.*, *Pounders v. Reif*, 2009 Ark. 581. In *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998), this court examined whether a complaint sounded in negligence or contract and stated:

> The complaint in this case obviously contained a claim of breach of contract. The question thus becomes *whether the reference to diligence in the contract is the sort of specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement.* We hold that it does not. The obligation to act diligently is present in every lawyer-client relationship. The violation of that obligation is, by definition, *nothing more than negligence.*

*Id.* at 49, 977 S.W.2d at 221 (emphasis added).

> In this instance, Farris alleges in her amended complaint that
>
> 25. Conger Wealth Management had exclusive control over Dr. Farris'[s] Fidelity Investment Account. By agreeing and assuring Dr. Farris that they would execute transfer of funds in a timely fashion so that the funds available to purchase the property and in failing to do so, the [appellees] breached the written Wealth Management Services contract with Dr. Farris.
> 26. The [appellees'] breaches of contract include, but are not limited to, failing to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely fashion and in compliance with Paragraph 5 of the written Wealth Management Agreement.
> 27. This breach of contract proximately caused Dr. Farris financial damages that would not have occurred otherwise.

Here, Farris alleges a breach-of-contract action. However, this court looks to the substance of a pleading instead of its label. *See, e.g.*, *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987); *Jack Wood Constr. Co., Inc. v. Ford*, 258 Ark. 47, 522 S.W.2d 408 (1975). The gist of Farris's allegation is that Conger "failed to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely fashion and in compliance" with the wealth-management agreement. This "failing to arrange" amounts to a failure to act diligently—a breach of duty—on Conger's part that is "nothing more than negligence." *Sturgis*, 335 Ark.

at 49, 977 S.W.2d at 221. Further, Farris alleges an essential element for a negligence cause of action by stating that the "breach of contract proximately caused" her compensatory and punitive damages. *See Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004) (stating that, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's damages).

Based on this analysis, I conclude that Farris's allegations sound in negligence and that the three-year statute of limitations applies, thereby barring her claim. Accordingly, I would affirm the circuit court's grant of summary judgment.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellant.

*David M. Hargis*, for appellee.