Cite as 2025 Ark. App. 301

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-649

| | |
|---|---|
| CHRISTOPHER WAYNE SHATLEY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered May 14, 2025<br><br>APPEAL FROM THE SHARP<br>COUNTY CIRCUIT COURT<br>[NO. 68CR-22-65]<br><br>HONORABLE ROB RATTON, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Christopher Shatley ("Shatley") appeals his convictions of two counts of rape following a two-day jury trial.[1] Shatley appeals both convictions and argues that the trial court erred in (a) denying his motion for directed verdict; (b) declining to recuse itself from presiding over Shatley's trial; and (c) denying Shatley's motion to continue to obtain bank records. Finding no error, we affirm.

---

[1]Shatley was convicted of rape under Arkansas Code Annotated section 5-14-103 (Repl. 2024) ("Count One"), which defines rape as a person who "engages in sexual intercourse or deviate sexual activity" with a minor under the age of fourteen; and Arkansas Code Annotated section 5-14-103(a)(4) & (c)(1) ("Count two"), which involves the rape of a minor under the age of eighteen and the perpetrator is deemed a guardian or stepparent of the victim.

On June 13, 2022, Shatley was criminally charged for rape of his stepdaughter, MC. During the course of his pending criminal charges and leading up to the trial, Shatley had four different attorneys representing him. The case was continued several times. While the trial was originally scheduled for December 13, 2023, the court held a hearing, and upon oral motion by Shatley's counsel, Stephen Lambert, it was rescheduled to June 24, 2024, with a motion and plea day set for May 20, 2024.[2] Lambert passed away on January 14, 2024. On February 20, Judge Ratton required Shatley, who was out on bail, to appear before him. Shatley appeared in court, but he was unrepresented. It is undisputed that Judge Ratton directed Shatley at that hearing that he needed to obtain counsel before the new motion day and trial date, which were set for May 20 and June 24, 2024, respectively. Shatley then proceeded to file a complaint with the Judicial Discipline and Disability Commission ("JDCC") and filed a motion to recuse claiming that Judge Ratton was prejudiced and biased against him for having him appear on February 20 without counsel.

On June 23, 2024, Shatley filed yet another motion to continue because he had been unable to procure certain bank records that he believed relevant to his defense. Shatley's counsel had failed to issue a proper subpoena to the bank; thus, there was no reasonable basis to continue the case. Judge Ratton denied that motion, stating that Shatley had ample time to get the bank records. As to the motion to recuse, Shatley presented his case, arguing that Judge Ratton was biased and held a hearing on February 20 without any notice to him.

---

[2]The case was ultimately continued to June 24, 2024, as the motion and plea day, and June 25–26 as the trial date.

After Shatley testified, Judge Ratton stated that the only matters discussed at that hearing were the trial dates and that Shatley needed counsel. Judge Ratton denied the motion to recuse.

At the trial on June 25-26, MC testified that from age twelve until after she turned fourteen, Shatley used his fingers and mouth to touch her vagina. Two weeks after MC's twelfth birthday, which was after MC started menstruating, Shatley told MC that he wanted to help her learn how to use tampons so that it didn't hurt her. She testified the first time he did this, he had her lie on the floor without her pants and underwear, and he placed his fingers inside her vagina and moved them around.[3] This caused her to scream, and Shatley placed a towel on her mouth to not wake the neighbors. She stated that Shatley told her it hurt so much because she tensed up. MC testified that he did this over the course of the next two years. Upon further inquiry, MC testified that at times, Shatley also would place his tongue on her vagina. She said it was really painful and scary and would often last five to ten minutes. She would try to count ceiling specks to pass the time.

After she turned fourteen, Shatley made MC take off her pants and underwear and sit on the edge of the couch. He put his finger inside her vagina. When she objected, Shatley told her that "[he] just wanted to make sure [she wasn't] closed up down there so this whole

---

[3]MV testified that her mother was never home when Shatley would do these things to her.

process would have been for nothing." MC testified that what he did to her caused her to feel "dead. Just—I just felt worthless." She testified that Shatley taught her how to use a condom, made her watch pornography, and supplied her with a purple vibrator that Shatley and her mom, Mary Beth, purchased. During a visit to Kirksville, Missouri,[4] Shatley took MC to Walmart and purchased a new vibrator that he used on MC at the apartment in Kirksville, which caused her to bleed. In addition, MC testified that Shatley bought her thong underwear, which he sometimes would make her show him that she was actually wearing. Shatley took inappropriate pictures of her and sent them to her Mary Beth and made inappropriate comments that he would "do [her] so hard if [he] was [her] age." She said that the abuse started to "simmer down" when she was fourteen but that Shatley still fondled her breasts under the pretext that he needed to rub lotion on them to prevent stretch marks. MC testified that the reason she did not tell anyone about the molestation initially was because Shatley was the only dad she had ever had, and she did not think he would hurt her like that. She did not understand or know that what he was doing was bad. On July 1, 2021, Mary Beth and Shatley's daughter was born. When Mary Beth came home from the hospital, MC decided she did not want the same thing to happen to her little sister, so she told Mary Beth about the molestation.

---

[4]Shatley and MC went to Kirksville, Missouri, to see Mary Beth, who was working on assignment as a travel nurse.

Mary Beth testified that she was married to Shatley for about eight years.[5] Mary Beth had to have a cesarean section when she gave birth to MC's little sister. When Mary Beth returned home, MC shared what Shatley had done to her. Mary Beth never left MC alone with Shatley again. But Mary Beth was on pain medication and could not move out immediately. Mary Beth devised a plan to leave the home they shared with Shatley by going to visit her father and her aunt. Mary Beth left the marital home with MC and the baby, on July 24, 2024, and after that contacted the Cave City Police Department.

Mary Beth also testified that when MC was thirteen, Shatley told her that he wanted to get MC a vibrator because that might prevent her from having sex. Mary Beth said she did not want to buy the vibrator, but Shatley was persistent, so they purchased a purple vibrator for MC with money from their joint account.

After the State rested, Shatley's attorney moved for directed verdict, stating that "no reasonable jury, given the delayed reporting, the inconsistent testimony, the lack of corroboration could come to a decision beyond a reasonable doubt on either count of rape." The court denied the motion.

Shatley called Cave City Police Chief Brian Barnett to testify in his case. Chief Barnett confirmed that their investigation revealed no women's thong underwear or a pink vibrator or sex toy of any kind during the execution of the search warrant at Shatley's home he shared with Mary Beth and MC.

---

[5]MC was six when Shatley and Mary Beth were first married.

Next, Shatley called to the stand Chloe Yun, who is Shatley's niece. Chloe testified that on two different occasions, she overheard Mary Beth say that she and Shatley bought their daughter a vibrator. Charles Vick, Shatley's brother-in-law, also testified that he overheard Mary Beth say "they got her a vibrator because they don't want her to be sexually active." Denise Vick, Shatley's sister, testified that Mary Beth was talking at a family gathering about purchasing the vibrator for MC so she would not go out and mess with boys. Shatley rested his case and renewed his motion for directed verdict. Judge Ratton again denied the motion.

The jury found Shatley guilty of both counts of rape. On July 8, 2024, the court entered its order sentencing Shatley to consecutive sentences of twenty-five years for Count One and ten years for Count Two in the Arkansas Division of Correction. Shatley timely appealed the sentencing order.

I. *Directed Verdict*

Shatley argues that the circuit court erred by denying his motions for directed verdict, specifically focusing on the (1) delay in reporting; (2) inconsistent testimony; and (3) lack of corroboration.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Severance v. State*, 2024 Ark. App. 87, 684 S.W. 3d 610. When reviewing sufficiency claims, this court will assess the evidence in the light most favorable to the State, consider only the evidence that supports the verdict, and affirm a conviction if there is substantial evidence to support it. *Id.* It is the jury's function to evaluate the credibility of the witnesses and resolve

6

any inconsistencies in the evidence presented at trial, and the jury may choose to believe the State's account of the facts rather than defendant's account. *Id.* Evidence is substantial if it is of sufficient force and character to reach a conclusion and pass beyond suspicion and conjecture. *Gregory v. State,* 341 Ark. 243, 15 S.W.3d 690 (2002).

Through MC's testimony, the jury was presented with sufficient evidence to find Shatley guilty of both counts of rape, which require a finding that Shatley engaged in deviate sexual activity with MC. Arkansas Code Annotated section 5-14-101 (Repl. 2024) provides, "(1) 'Deviate sexual activity' means any act of sexual gratification involving: (B) The penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Shatley was convicted of rape under Count One because he was found to have engaged in deviate sexual activity with MC while she was under the age of fourteen. Ark. Code Ann. § 5-14-103. Likewise, Shatley was convicted of rape under Count Two because while he was acting as MC's guardian,[6] he engaged in deviate sexual activity with MC who was over the age of fourteen but under the age of eighteen. Ark. Code Ann. § 5-14-103(a)(4) & (c)(1).

Shatley's argument that a directed verdict should have been granted because of MC's delay in reporting is meritless. The abuse started when MC was twelve and continued until she was over fourteen. She reported the molestation by Shatley when she was fifteen. Questions of credibility are left to the jury. It is reasonable that a jury accepted MC's

---

[6]Under Ark. Code Ann. § 5-14-101(4), "Guardian" includes a stepparent.

7

explanation as to why she did not disclose the abuse earlier: Shatley was the only dad she had ever known, and she trusted he would not hurt her.

With respect to Shatley's second argument—that MC's testimony was inconsistent with what the officers found during the search warrant—in resolving conflicting testimony and inconsistent evidence, the jury is entitled to choose to believe the State's account of the facts rather than Shatley's. *Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007). Shatley appears to be arguing that the fact that the police found no thong underwear at the home, no photos on his phone, and no sex toys was not consistent with MC's testimony, calling it "inherently improbable and so clearly unbelievable that reasonable minds could not differ thereon." The jury heard all the evidence and had the right to believe the State's presentation of its case, including MC's and Mary Beth's testimony. It was up to the jury to weigh the evidence and testimony of the witnesses and decide whether the failure of the search warrant to produce those items undermined the credibility of MC and Mary Beth.

With respect to Shatley's third argument, that MC's testimony is uncorroborated and cannot be used, *McCauley v. State*, 2023 Ark. 68, at 4, 663 S.W.3d 383, 386, provides that a rape victim's testimony—including a minor child's uncorroborated testimony—may constitute substantial evidence to sustain a rape charge. In *McCauley*, the minor child testified that one afternoon when he was in second grade, he went to McCauley's house where McCauley "put his thing in [him]" indicating his penis. This court held that the minor child's testimony alone was sufficient to show that McCauley engaged in deviate sexual activity with the minor child who was under the age of fourteen.

8

As the court held in *McCauley*, any issue regarding the credibility of MC's testimony in the case before us was for the jury to resolve, not this court on appeal. The jury found MC credible, and there was no need for corroboration. *Id.*; *see also Ellis v. State*, 364 Ark. 538, 542, 222 S.W.3d 192, 196 (2006).

Given the deference afforded to the jury with respect to credibility and given the jury's entitlement to choose the State's version of the facts rather than Shatley's, the jury had ample evidence to convict Shatley of both counts of rape.

## II. *Recusal*

Shatley next argues that the circuit court erred in denying his recusal motion. He claims that Judge Ratton was biased and prejudiced against him. This court reviews a circuit court's denial of a motion to recuse under an abuse of discretion standard. *Ferguson v. State*, 2016 Ark. 319, 498 S.W.3d 733. Abuse of discretion "is a high threshold that does not simply require error in the circuit court's decision but that the circuit court act improvidently, thoughtlessly, or without due consideration." *Maiden v. State*, 2014 Ark. 294, at 4, 438 S.W.3d 263, 268.

A trial judge is presumed to be impartial, and the party seeking disqualification has the burden of proving otherwise.[7] The fact that there are adverse rulings is not enough to

---

[7]*Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998).

demonstrate bias.[8] Moreover, a party filing a complaint against the trial judge with the JDDC does not require recusal.[9]

In this case, the purpose of the February 20, 2024 hearing was to confirm the date of the trial and make sure Shatley was aware he needed counsel. Judge Ratton's denial of the continuance, as discussed below, was not prejudicial and is not grounds to require recusal.

In *Keene*, the appellant was found guilty of delivery of a controlled substance (methamphetamine) and was sentenced to ten years in the Arkansas Department of Correction. Keene argued on appeal that the trial judge erred when he refused to recuse himself after Keene had filed a disciplinary action with the JDDC against the trial judge. This court held the trial court did not abuse its discretion where "the appellant has not alleged any specific instances of bias or shown how he was prejudiced by the trial judge's failure to recuse." *Id.* at 42, 938 S.W.2d at 860.

As in *Keene*, Shatley could not demonstrate prejudice by the judge's refusal to recuse himself when guilt was decided by a jury, and only the minimum sentence was imposed. Shatley did not meet his burden in this case. He made no showing that he was treated unfairly during the trial or that the complaint with the JDDC affected any rulings or the outcome of the trial. For these reasons, we cannot find that the circuit court abused its discretion in denying the motion to recuse.

---

[8]*Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004).

[9]*Keene v. State*, 56 Ark. App. 42, 938 S.W.2d 859 (1997).

III. *Continuance*

This court's standard of review in the denial of a continuance is judicial abuse of discretion amounting to a denial of justice. *Dyer v. State*, 343 Ark. 422, 431 36 S.W.3d 724, 729 (2001). Shatley's attorney requested a continuance on June 23, 2024—one day before the motion and plea day—to properly subpoena bank records. However, before the motion and plea day, Shatley's counsel had ample time to subpoena the bank records. When his attorney initially issued the subpoena for the bank records, it was not sufficient and did not generate a response. Most importantly, Shatley's only purpose for the bank records was to prove that Mary Beth bought MC the vibrator instead of Shatley. Mary Beth admitted that she agreed to the purchase of the first vibrator, and that the money came from their joint account. The jury heard this evidence. Likewise, the purchase of the first vibrator had no bearing on any molestation or abuse of MC by Shatley. There was testimony that he bought a second vibrator unbeknownst to Mary Beth and used it on MC to the point that it made her bleed.

To demonstrate an abuse of discretion, the appellant must show that he was prejudiced by the denial of the continuance. *Id.* In the case before us, Judge Ratton did not abuse his discretion by denying the continuance. Shatley's attorneys waited until the day before the motion and plea day to file his motion, and he did not properly issue the subpoena. Most importantly, he was not prejudiced by the denial of the motion to continue because the bank records would not have affected the outcome of the case.

Affirmed.

11

HARRISON and BARRETT, JJ. agree.

*R.T. Starken*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.